Carlos F. SERNA, Jr., Appellant,

v.

The STATE of Texas, Appellee.

No. 3–93–195–CV.

Court of Appeals of Texas, Austin.

June 8, 1994.

Rehearing Overruled July 6, 1994.

Richard G. Weil, San Antonio, for appellant.

Dan Morales, Atty. Gen., Don Walker, Asst. Atty. Gen., Austin, for appellee.

Before CARROLL, C.J., and KIDD and B.A. SMITH, JJ.

BEA ANN SMITH, Justice.

The question presented is whether a corporate officer should be held liable for penalties imposed on the corporation, after its corporate privileges had been forfeited, for the corporation's failure to plug its abandoned oil wells as required by law.

## BACKGROUND

Doer Energy Corporation (Doer), a Texas corporation, failed to file its initial franchise tax report due in August 1987. Tex.Tax Code Ann. § 171.201(b) (West 1992) ("Tax Code"). The Secretary of State initiated forfeiture proceedings; Doer forfeited its corporate privileges on December 4, 1987, and forfeited its corporate charter on June 20, 1988. After the forfeiture of corporate privileges, each director or officer becomes liable for certain debts of the corporation:

> If the corporate privileges of a corporation are forfeited for the failure to file a report or pay a tax or penalty, each director or officer of the corporation is liable for each debt of the corporation that is created or incurred in this state after the date on which the report, tax, or penalty is due and before the corporate privileges are revived. The liability includes liability for any tax or penalty imposed by this chapter on the corporation that becomes due and payable after the date of the forfeiture.

Tax Code § 171.255(a). Doer's corporate privileges were never revived.

Doer incorporated for the ostensible purpose of taking control of the Askew lease

which contained pre-existing oil wells. The Railroad Commission granted Doer permission to remove the seals covering four of these wells; at this time the corporation had not forfeited its privileges. When the wells produced little oil, Doer abandoned them, uncapped.

Texas law requires that operators plug their wells, or otherwise place them in compliance with Railroad Commission rules. Tex.Nat.Res.Code Ann. § 89.011 (West 1993) ("Natural Resources Code"). The Commission's rules require that operators commence plugging within one year after drilling operations cease on dry or inactive wells. 16 Tex.Admin.Code § 3.14 (1988). The Railroad Commission has authority to impose a fine of up to $10,000 a day against an operator who violates these requirements; each day of non-compliance constitutes a separate violation. Natural Resources Code § 81.-0531. On April 24, 1989, almost two years after Doer failed to pay franchise taxes, the Railroad Commission ordered Doer to plug or otherwise place its wells in compliance, and assessed a fine against Doer of three thousand dollars.

When Doer failed to plug its wells or pay this penalty, the State brought suit against Doer and its two officers, Carlos F. Serna, Jr. and Gordon M. Bishop, Jr., seeking an injunction to compel action to bring the wells into compliance, as well as administrative and civil penalties. The court, sitting without a jury, rendered final judgment against all three defendants, jointly and severally, for administrative and civil penalties totalling twenty-one thousand dollars, plus legal fees and costs. Only Serna appeals from this judgment. Serna first contends that the trial court erred in holding the corporate officers liable for any of the debt. Alternatively, Serna contends that even if the officers were liable for the administrative penalties, they should still be exempt from civil penalties, costs, and fees. We will affirm the trial court's judgment.

## DISCUSSION

Although raised by points of error challenging the sufficiency of the evidence supporting the trial court's judgment, Serna's complaint involves the proper construction of a statute. "[M]atters of statutory construction are questions of law for the court to decide." *Johnson v. City of Fort Worth,* 774 S.W.2d 653, 656 (Tex.1989).

In his first point of error, Serna argues that the trial court erroneously construed Tax Code section 171.255(a) to impose liability on these corporate officers. In his second point of error, Serna asserts that the statute should not be construed to impose liability for debt other than the Railroad Commission's administrative penalty of three thousand dollars. Both points of error turn on when these debts were incurred and the manner in which they were incurred. By registering with the Railroad Commission as operator of the four Askew wells, Doer became responsible for eventually plugging these wells. 16 Tex.Admin.Code § 3.14 (1988). Serna does not deny Doer's responsibility. He argues that the timing and manner in which the administrative penalties and legal penalties arose precludes his liability as a corporate officer.

## No Specific Action Required
## After Forfeiture

■ Serna claims that for an officer to be liable for a corporate debt, the officer must take specific action creating that debt after the corporate privileges have been forfeited. Because no officer or employee of Doer took any positive action, Serna claims that the Railroad Commission and trial court, rather than Serna himself, created these debts. We believe this assertion is based upon an improper application of prior statutes and a misinterpretation of the present Tax Code.

The Tax Code no longer requires that debts be knowingly and consensually created for an officer to be held liable. *See* Tax Code § 171.255(a). Under a predecessor statute, an officer was liable only if the debt was created or incurred with the officer's knowledge, approval, and consent. *First Nat'l Bank of Boston v. Silberstein,* 398 S.W.2d 914, 915 (Tex.1966). Even under the former statute, *positive action* creating the debt was not required. *Id.* at 916.

■ Serna understands the current Tax Code to require the officer to take some specific action after the forfeiture of the corporate privileges to create or incur the debt. However, "incur" has been defined as "brought on," "occasioned," or "caused." *Schwab v. Schlumberger Well Surveying Corp.*, 198 S.W.2d 79, 81 (Tex.1946). This definition is broad enough to include debts that have been "brought on" by an act of omission. Additionally, the requirement that the debt be "created or incurred after the date on which the report, tax, or penalty is due," refers to the timing of the liability rather than the timing of specific actions of the corporate officers. The liability must be "created or incurred" after the forfeiture of corporate privileges.

The current Tax Code provides an affirmative defense to personal liability for any officer who can show that the debt was incurred over the officer's objection, or without the officer's knowledge, and that the officer could not have gained this knowledge through reasonable diligence. Tax Code § 171.255(c). Serna did not raise this affirmative defense in the trial court, and cannot now claim its protection.

### "Relation Back" Doctrine Not Applicable

■ Under Texas case law, contractual obligations entered into *before* the forfeiture of corporate privileges do not impose liability on the officers or directors for payments that are due *after* forfeiture. *Schwab*, 198 S.W.2d at 81; *Rogers v. Adler*, 696 S.W.2d 674, 676 (Tex.App.—Dallas 1985, writ ref'd n.r.e.); *Curry Auto Leasing, Inc. v. Byrd*, 683 S.W.2d 109, 112 (Tex.App.—Dallas 1984, no writ). Even when the exact amount of future debt is unknown at the time the parties enter into the contract, Texas case law holds that the entire debt was created at the time the contract was signed. "When parties enter into a contract the law presumes they intended the consequences of its performance. It follows that performance or implementation of the contractual provisions relate back to and are authorized at the time of execution of the contract." *Curry Auto Leasing*, 683 S.W.2d at 112 (citation omitted). This "rela-

tion back" doctrine, however, only applies to contractual obligations.

■ The debts incurred by Doer in this instance were caused by its failure to take actions statutorily required and administratively ordered. Serna argues that these obligations should "relate back" to the documents filed with the Railroad Commission which made Doer, as the operator, responsible for eventually capping these wells. We decline to apply the "relation back" doctrine applicable to contracts because these debts differ from contractual obligations in two fundamental ways: (1) Doer had a continuing obligation to take affirmative action, and (2) no debt existed until the agency filed suit to impose the fine.

Doer and its officers had a continuing obligation to plug the wells: each passing day created additional violations and additional fines. "Each day a violation continues may be considered a separate violation for purposes of penalty assessments." Natural Resources Code § 81.0531(b). Thus, each day of non-compliance created a new corporate obligation. *See Jonnet v. State*, 877 S.W.2d 520, 523–524 (Tex.App.—Austin 1994, no writ h.). Doer's officers are thus liable for each day of inaction after the loss of corporate privileges.

Additionally, violation of the plugging regulation does not automatically create any debt; a violator *"may* be assessed a civil penalty by the commission." Natural Resources Code § 81.0531(a) (emphasis added). The Railroad Commission must take administrative action to impose a penalty. *See Jonnet,* at 523. Because this penalty is permissive, it does not exist until assessed. Therefore, this corporate debt was "created" when the Railroad Commission assessed the fine on April 24, 1989, *after* Doer's officers lost protection of the corporate shield in August 1987.

■ The purposes behind Tax Code section 171.255(a) support holding Serna liable for Doer's continuing debts under these circumstances. "The inescapable conclusion is that this statute was enacted solely for the purpose of raising revenue. The penalties imposed for failure to pay the franchise tax

are heavy, and were evidently provided to hasten payment and inflict punishment on delinquent corporations." *Wilburn v. State,* 824 S.W.2d 755, 761 (Tex.App.—Austin 1992, no writ). Holding officers liable for failing to act on a continuing obligation, after the forfeiture of corporate privileges, inflicts a significant punishment on corporate officers for neglecting an obligation to protect the environment by plugging oil wells and strongly encourages timely payment of franchise taxes. We are mindful that section 171.255(a) must be strictly construed and cannot be extended beyond its clear meaning. *Wilburn,* 824 S.W.2d at 760–61. Our decision in no way offends the clear mandate of the statute.

The Texas Supreme Court has held the predecessor statute was "meant to prevent wrongful acts of culpable officers of a corporation, and was for the protection of the public and particularly those dealing with the corporation." *Schwab,* 198 S.W.2d at 81. When a corporation neglects its continuing obligation to plug an oil well, the public may suffer severe environmental harm. An officer's act of omission that allows an environmental contaminant to remain an open threat to the environment day after day is a wrongful act that should result in individual liability. We overrule Serna's first point of error.

The additional penalties, costs, and fees discussed in Serna's second point of error were also valid. By failing to comply with the administrative order after the forfeiture, Doer's officers exposed themselves to liability for the additional penalties created through an enforcement action. We overrule Serna's second point of error.

### CONCLUSION

We conclude that the trial court properly construed the statute, and we therefore affirm the judgment.