# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-08-00467-CV

**Anderson Petro-Equipment, Inc., a Texas Domestic Corporation, and
Curtis Ray Anderson, Appellants**

**v.**

**State of Texas, Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 126TH JUDICIAL DISTRICT
## NO. D-1-GV-06-002201, HONORABLE MARGARET A. COOPER, JUDGE PRESIDING

## O P I N I O N

The State of Texas brought an action in district court to enforce three final orders issued by the Railroad Commission assessing administrative penalties against Anderson Petro-Equipment, Inc. (Anderson Petro) for failure to plug inactive wells in violation of the Texas Natural Resources Code. *See* Tex. Nat. Res. Code Ann. § 81.0534 (West 2001). The State sued Anderson Petro and its president, Curtis Ray Anderson, (collectively, appellants) to enforce the orders and to recover additional penalties, attorneys' fees, and clean-up costs. *See id.* §§ 85.381, .383, 89.083. The State's claims against Anderson individually sought (1) to enforce two of the three final orders that were issued after Anderson Petro forfeited its corporate privileges and charter, and (2) to recover clean-up costs incurred by the State after the forfeiture. *See* Tex. Tax Code Ann. § 171.255 (West 2008). Appellants challenge the district court's judgment on the ground that the State's claims relating to the two final orders issued after Anderson Petro forfeited its corporate privileges are

"post-dissolution" claims for which neither the dissolved corporation nor its officers and directors are liable. We will affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Anderson Petro was the registered operator of three wells that had not been plugged as required by, or were otherwise not in compliance with, Texas Railroad Commission rules and statutes. *See* Tex. Nat. Res. Code Ann. title 3, subtitle B, ch. 89 (West 2001 & Supp. 2009); 16 Tex. Admin. Code § 3.14 (2010) (Tex. R.R. Comm'n, Plugging). The wells at issue were Arco-Hurd Fee Lease (09704), Well No. 1, Joes Lake East Field, Tyler County ("the Joes Lake East Well"); Well No. 1, Arco Fee Sec. 189 Lease (10650), Beech Creek Field (9400), Hardin County ("the Beech Creek Well"); and Well No. 1, Hankamer Sec. 31 Lease (18075), Devils Pocket, West Field, Newton County ("the Devils Pocket West Well"). The Commission initiated enforcement actions against Anderson Petro resulting in three final orders:

i. Final order dated May 11, 2004 ordering Anderson Petro to plug or otherwise place in compliance the Joes Lake East Well and pay $2,000 in administrative penalties ("the May 2004 Order");

ii. Final order dated October 5, 2005 ordering Anderson Petro to pay $2,000 in administrative penalties for a period of noncompliance of the Beech Creek Well ("the October 2005 Order"); and

iii. Final order dated April 11, 2006 ordering Anderson Petro to plug the Devils Pocket West Well and pay $5,000 in administrative penalties and reimbursement of $2,936.25 in state funds expended to clean the lease ("the April 2006 Order").

Additional state funds totaling $1,146.25 were spent to clean up the Devils Pocket West Well in November 2005 and November 2006.

2

Anderson Petro failed to pay its 2004 franchise taxes when due on May 17, 2004. This resulted in the forfeiture of Anderson Petro's corporate privileges on October 13, 2004. *See* Tex. Tax Code Ann. § 171.251 (West 2008) (comptroller shall forfeit corporate privileges of corporation if corporation fails to pay franchise taxes). Subsequently, Anderson Petro's corporate charter was forfeited on February 11, 2005. *See id.* § 171.309 (West 2008) (secretary of state may forfeit charter upon receiving certification from comptroller that 120 days have passed since corporation forfeited its corporate privileges and corporation has not revived its privileges). Although the May 2004 Order was issued while Anderson Petro was in good standing, both the October 2005 Order and the April 2006 Order were issued after Anderson Petro had forfeited both its corporate privileges and its corporate charter.

The State brought an action in district court against Anderson Petro seeking (1) to recover the administrative penalties assessed in each of the three Commission orders, along with civil penalties, court costs, and attorneys' fees; (2) reimbursement of the state funds used to clean up the Devils Pocket West Well; and (3) an injunction for Anderson Petro's failure to comply with the Commission's final orders. The State also sued Anderson, seeking to impose individual liability for (1) the administrative penalties assessed in the October 2005 Order and the April 2006 Order along with the associated civil penalties; (2) $4,082.50 as reimbursement for the cost to clean up the Devils Pocket West Well; and (3) court costs and attorneys' fees. The State asserted that Anderson was individually liable for these debts of Anderson Petro because they were created or incurred after Anderson Petro forfeited its corporate privileges. *See* Tex. Tax Code Ann. § 171.255 (if corporate privileges are forfeited for failure to file report or pay tax or penalty, each director or officer of

3

corporation is liable for each debt of corporation created or incurred in this state after date on which report, tax, or penalty is due and before corporate privileges are revived).

The district court rendered judgment against Anderson Petro for the $2,000 in administrative penalties assessed in the May 2004 Order along with $20,500 in civil penalties for failure to comply with that order.[1] The district court rendered judgment against Anderson Petro and Anderson, jointly and severally, for (i) the $5,000 in administrative penalties assessed in the October 2005 Order and the April 2006 Order, (ii) $4,197.70 as reimbursement for funds used to clean up the Devils Pocket West Well; (iii) $50,000 in civil penalties for failure to comply with the two orders; and (iv) $11,481.25 in attorneys' fees plus costs. The judgment also ordered Anderson Petro to plug or otherwise place in compliance the Joes Lake East Well, and ordered Anderson Petro and Anderson, jointly and severally, to plug the Devils Pocket West Well.

Appellants challenge the district court's judgment, contending in one issue that the court erred by rendering judgment against them on the State's claims for administrative and civil penalties resulting from Anderson Petro's failure to comply with final orders of the Railroad Commission "issued after Appellant corporation became a 'dissolved corporation' under Art. 7.12(F)(1)(e), Tex. Bus. Corp. Act." *See* Tex. Bus. Corp. Act Ann. art. 7.12(F)(1)(e) (West 2003) (term "dissolved corporation" in this article means corporation whose charter was forfeited pursuant to tax code unless forfeiture has been set aside).[2] Appellants contend that, because

---

[1] Appellants do not challenge this portion of the district court's judgment.

[2] On January 1, 2010, the Texas Business Corporation Act expired and was replaced by the Texas Business Organizations Code. *See* Tex. Bus. Corp. Act Ann. art 11.02(B) (West Supp. 2009) ("This Act expires January 1, 2010."). With the exception of filing fee requirements, the provisions of the business organizations code did not apply until January 1, 2010 to entities formed before

4

the October 2005 Order and the April 2006 Order were issued after Anderson Petro forfeited its corporate charter, the State's claims did not exist prior to the corporation's dissolution. Appellants argue that, as a "dissolved corporation," it could not be held liable for any claim other than an "existing claim." *See id.* art. 7.12(A)(2) (dissolved corporation continues corporate existence for three years from date of dissolution for purpose of permitting survival of any existing claim by or against it), 7.12(C) (corporation shall not be liable for any claim other than existing claim). Appellants maintain that the State could not sue to enforce the October 2005 Order and the April 2006 Order because they were not "existing claims" as that term is defined in article 7.12 of the business corporation act. *See id.* art. 7.12(F)(3) (term "existing claim" in this article means claim that existed before dissolution and is not otherwise barred by limitations or contractual obligation incurred after dissolution).[3]

  We will affirm the district court's judgment.

---

January 1, 2006, such as Anderson Petro, unless the entity elected early adoption. *See* Tex. Bus. Org. Code Ann. §§ 402.001-.005 (West Pamph. 2007). There is nothing in the record to indicate that Anderson Petro elected early adoption. At the time of trial, therefore, the operative statute was the business corporation act. In any event, the business organizations code made no substantive changes to business corporation act article 7.12. *See id.* §§ 11.001, 11.051, 11.055, 11.152, 11.254, 11.311, 11.351, 11.356-.359.

  [3] Appellants did not bring an appellate issue complaining of the district court's imposition of individual liability on Anderson under section 171.255 of the tax code. *See* Tex. Tax Code Ann. § 171.255(a) (West 2008) (director or officer of corporation is liable for each debt of corporation created or incurred in state after date on which report, tax, or penalty is due and before corporate privileges are revived). Appellants' arguments, both in the district court and on appeal, focus on their contention that the State's claims did not exist before Anderson Petro became a "dissolved corporation" under the business corporation act, and therefore that neither Anderson Petro nor its officers could be held liable for post-dissolution claims.

**DISCUSSION**

*Liability for post-forfeiture orders*

Article 7.12 of the business corporation act is a survival statute that provides the exclusive means by which an injured party may assert a claim against a dissolved corporation that has ceased to exist for other purposes. *Hunter v. Fort Worth Capital Corp.*, 620 S.W.2d 547, 549-51 (Tex. 1981).[4] A corporation that has forfeited its charter pursuant to the tax code is included in the article 7.12 definition of a "dissolved corporation" unless and until the forfeiture has been set aside. *See* Tex. Bus. Corp. Act. Ann. art. 7.12(F)(1)(e). Article 7.12(A) provides that:

> [a] dissolved corporation shall continue its corporate existence for a period of three years from the date of dissolution, for the following purposes:
>
> . . .
>
> > (2) permitting the survival of any existing claim by or against the dissolved corporation; . . . .

*Id.* art. 7.12(A)(2). The term "existing claim" means "a claim that existed before dissolution and is not otherwise barred by limitations or a contractual obligation incurred after dissolution." *Id.* art. 7.12(F)(3). A dissolved corporation is not liable for a post-dissolution claim. *See Hunter*, 620 S.W.2d at 553; *Landrum v. Thunderbird Speedway, Inc.*, 97 S.W.3d 756, 758-59 (Tex. App.—Dallas 2003, no pet.). Appellants argue that the State's claims to enforce orders issued by the Railroad Commission after Anderson Petro forfeited its corporate charter are post-dissolution

---

[4] At common law, dissolution terminated the legal existence of a corporation, and it could neither sue nor be sued; all legal proceedings to which it was a party abated. *See Hunter v. Fort Worth Capital Corp.*, 630 S.W.2d 547, 549-50 (Tex. 1981); *Suarez v. Sherman Gin Co.*, 697 S.W.2d 17, 19 (Tex. App.—Dallas 1985, writ ref'd n.r.e.).

6

claims for which the corporation cannot be held liable under article 7.12. Appellants also challenge the district court's judgment against Anderson individually for all damages and relief awarded to the State for enforcement of the October 2005 Order and the April 2006 Order. Appellants contend that, like the corporation, Anderson cannot be liable for enforcement of the orders because they issued after Anderson Petro was dissolved. Appellants argue that, because there can be no liability against the dissolved corporation, there is likewise no liability to assess against the corporation's officers and directors individually. The linchpin of appellants' challenge to both corporate and individual liability is their contention that the State's claims did not exist pre-dissolution and therefore cannot be pursued against either the corporation or its officers and directors. We disagree.

Under article 7.12, a "claim" is "a right to payment, damages, or property, whether liquidated or unliquidated, accrued or contingent, matured or unmatured." Tex. Bus. Corp. Act Ann. art. 7.12(F)(2). The statute broadly defines the term, and includes contingent, unliquidated or unmatured claims. A "contingent liability" is one that is not now fixed, but which will become so upon the occurrence of some future event. *See United States v. Leal*, 30 F.3d 577, 586 (5th Cir. 1994) (quoting Black's Law Dictionary 321); *see also Warren Co., Inc. v. Commissioner of Internal Revenue*, 135 F.2d 679, 684 (5th Cir. 1943) (contingent liability is potential liability that may become absolute liability upon happening of future event). Contingent liabilities include obligations that are reasonably anticipated but that have not yet actually been incurred. *Arch Petroleum, Inc. v. Sharp*, 958 S.W.2d 475, 478 (Tex. App.—Austin 1997, no pet.). Once the actions that may give rise to future liability have occurred, the contingent claim comes into existence. Article 7.12 requires only that the actions giving rise to the liability occur before dissolution. If they do, the statute plainly

7

provides for the survival of a party's right to assert claims arising out of or resulting from those

actions even after the corporation's dissolution.[5]

The question before us, then, is whether the actions that ultimately gave rise to the

claims asserted by the State in this suit occurred prior to Anderson Petro's dissolution on

February 11, 2005. If they did, the State's claims existed as contingent liabilities of Anderson Petro,

and as unmatured and unliquidated claims against it, prior to its dissolution.

***October 2005 Order***

Texas law requires that operators plug their inactive wells, or otherwise place them

in compliance with Railroad Commission rules. Tex. Nat. Res. Code Ann. § 89.011 (West Supp.

---

[5] Our reading of this statute comports with the directive that "[s]tatutes prolonging the existence of a dissolved corporation are remedial and should be given liberal construction." *See Alamo Fence Co. v. United States*, 240 F.2d 179, 181 (5th Cir. 1957) (quoting *Eastman, Gardiner & Co. v. Warren*, 109 F.2d 193 (5th Cir. 1940)). As the Fifth Circuit noted, "this is especially true in Texas where the State constitution provides that its corporation laws 'shall . . . provide fully for the adequate protection of the public . . . .'" *Id.* It is also consistent with this Court's holding in *Strata v. State*, in which we considered a similar provision in the bankruptcy code:

> Under the bankruptcy code, whether a claim for payment of the type at issue in this case is discharged depends on when that claim arose. The bankruptcy code defines a "claim" as a:
>
> > (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured;
>
> . . .
> As the statute explicitly states, whether a claim is unliquidated, contingent, unmatured, or unsecured is immaterial. The bankruptcy code requires only that the elements giving rise to liability occurred before the bankruptcy petition was filed.

264 S.W.3d 832, 837-38 (Tex. App.—Austin 2008, no pet.) (citations omitted).

2009). The Commission's rules require that operators commence plugging within one year after drilling operations cease on dry or inactive wells. 16 Tex. Admin. Code § 3.14. The October 2005 Order assessed a $2,000.00 penalty against Anderson Petro for plugging violations at the Beech Creek Well, and further ordered that "[n]oncompliance with this order is subject to enforcement by the Attorney General and subject to civil penalties of up to $10,000 per day per violation." The October 2005 Order includes findings of fact that the Beech Creek Well (1) ceased production on or before March 31, 2002, (2) was not properly plugged in compliance with the Commission's rules, and (3) was out of compliance from April 1, 2003 until October 18, 2004. All of the events giving rise to the assessment of penalties occurred prior to the forfeiture of Anderson Petro's corporate charter. From the commencement of the period of non-compliance, Anderson Petro had a contingent liability to the Commission for administrative and civil penalties. *See* Tex. Nat. Res. Code Ann. § 81.0531(a) (providing for assessment of penalties for violation of provisions of rules pertaining to safety or prevention or control of pollution). The State also had an unmatured claim against Anderson Petro for civil penalties in the event Anderson Petro failed to pay the assessed administrative penalties. *See id.* § 81.0534 (civil penalties owed under sections 81.0531 through 81.0533 of code may be recovered in civil action brought by attorney general at request of commission). In its petition, the State sought to recover the administrative penalties assessed in the October 2005 Order along with additional penalties for Anderson Petro's failure to comply with the order. These claims existed, albeit in a contingent and unmatured form, prior to Anderson Petro's dissolution and, consequently, Anderson Petro's corporate existence continued for three years for purposes of permitting the survival of these claims. *See* Tex. Bus. Corp. Act Ann. art 7.12(A)(2), (C).

9

*April 2006 Order*

Applying the same analytical framework, we next consider whether Anderson Petro's corporate existence continued for three years for the purpose of permitting survival of the State's claims related to the April 2006 Order. The Commission ordered Anderson Petro to plug the Devils Pocket West Well and reimburse $2,936.25 in State funds expended to clean up the well, and assessed a penalty of $5,000 for plugging violations. The April 2006 Order includes findings that the Devils Pocket West Well ceased production on or before January 2002 and was not properly plugged in compliance with the Commission's rules. In its petition, the State sought to recover the penalties assessed by the Commission and additional penalties for failure to comply with the order. The State also sought reimbursement for the $2,396.25 in State funds used to clean up the well in July 2005, along with an additional $1,146.25 in State funds spent to clean up the well in November 2005 and November 2006. Finally, the State sought an injunction requiring Anderson Petro to plug or otherwise bring the Devils Pocket West Well into compliance. All of these claims arose out of Anderson Petro's failure to plug the Devils Pocket Well by January 2003, twelve months after the well ceased production, as required by Commission rules. *See* 16 Tex. Admin. Code § 3.14. The event giving rise to the assessments contained in the April 2006 Order and the claims asserted by the State in its petition occurred prior to the date Anderson Petro forfeited its corporate charter. Consequently, those claims existed as either a contingent liability of, or an unmatured claim against, Anderson Petro prior to its dissolution.

Appellants cite to this Court's holdings in *Jonnet v. State*, 877 S.W.2d 510, 521-23 (Tex. App.—Austin 1994, writ denied) and *Serna v. State*, 877 S.W.2d 516, 517-18 (Tex.

App.—Austin 1994, writ denied), in an attempt to bolster their argument that the State's claims did not exist pre-dissolution. This Court held in *Jonnet* that, for purposes of tax code section 171.255, the "debt of the corporation" was not "created or incurred" until the Commission issued its order directing the corporation to pay a penalty. 877 S.W.2d at 523. We held in *Serna* that the corporate debt was "created" when the Commission assessed its fine. 877 S.W.2d at 519. Anderson cites *Jonnet* and *Serna* for the proposition that "[a]n administrative penalty under the Natural Resources Code or the obligation to pay the penalty does not exist until assessed by the Railroad Commission in a final order." Anderson's reliance on these cases is misplaced—in *Jonnet* and *Serna*, this Court was addressing the question of when a "debt of the corporation" is "created or incurred" under section 171.255 of the tax code for the purpose of imposing individual liability on officers and directors of a corporation that has forfeited its corporate privileges. This is a different question from what constitutes an "existing claim" under article 7.12 of the business corporation act, for which even a dissolved corporation may be held liable. We conclude that the claims asserted by the State in this suit were "existing claims" under article 7.12 of the business corporation act prior to February 11, 2005, the date Anderson Petro forfeited its corporate charter and became a "dissolved corporation."

In two sentences in their brief, appellants contend that (1) because claims against an officer may only be brought in district court, a claim for a "debt" against the officer does not exist until brought in court, and (2) a suit seeking to require a corporate officer to plug a well does not constitute a claim for a liquidated money obligation. Appellants do not further elaborate, explain or adequately brief these issues. *See* Tex. R. App. P. 38.1(h) (brief must contain clear and concise argument for contentions made, with appropriate citations to authorities and to record). These

11

two statements, unsupported by argument or authority, present nothing for this Court to review. *See General Servs. Comm'n v. Little-Tex Insulation Co.*, 39 S.W.3d 591, 598 n.1 (Tex. 2001).

### Timeliness of State's suit

An existing claim must be brought against a dissolved corporation before the expiration of the three-year period following the date of dissolution. *See* Tex. Bus. Corp. Act Ann. art. 7.12(C). Here, the State filed its petition asserting claims to recover for monetary and injunctive relief arising out of Anderson Petro's failure to plug the Beech Creek West Well and the Devils Pocket West Well on November 2, 2006. This suit was filed within three years of February 11, 2005, the date Anderson Petro forfeited its corporate charter and became a "dissolved corporation" for purposes of article 7.12. *See id.* art. 7.12(F)(1)(e). Consequently, Anderson Petro continues to survive for purposes of the State's suit "until all judgments, orders, and decrees therein have been fully executed . . . ." *See id.* art. 7.12(C). We overrule appellants' issue.

### CONCLUSION

Having overruled appellants' issue, we affirm the district court's judgment.

_____

Diane M. Henson, Justice

Before Chief Justice Jones, Justices Waldrop and Henson

Affirmed

Filed: June 18, 2010