**Luis G. TAYLOR, Appellant,**

v.

**FIRST COMMUNITY CREDIT UNION, Appellee.**

**No. 14–09–00051–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

July 29, 2010.

J.B. Whittenburg, Beaumont, for appellant.

Frederick L. Unger, Houston, for appellee.

Panel consists of Justices FROST, BOYCE, and SULLIVAN.

## OPINION

KEM THOMPSON FROST, Justice.

The primary issue in this appeal is the applicability of the "relation back" doctrine under sections 171.252 and 171.255 of the Texas Tax Code governing director and officer liability for a corporation's debts when corporate privileges are forfeited for failure to file a required report. An officer and director of an automobile dealer appeals the trial court's judgment holding him liable for the dealer's debts to a credit union. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case was tried on an agreed statement of facts, which are set forth herein.[1]

Texan Automotive Inc. ("Automotive"), an automobile dealer, was a corporation chartered under the laws of the State of Georgia in March 2003, and authorized to do business in Texas in April 2003. The company's State of Texas franchise tax report was due on September 7, 2004. That report was never filed and on September 8, 2004, the company became delinquent in filing this report. Automotive's corporate privileges were forfeited in January 2005 for failure to satisfy franchise tax requirements and were never revived. Automotive's corporate certificate was forfeited on May 6, 2005. A few months later, the corporation was dissolved in the State of Georgia.

Appellant Luis G. Taylor served as a director of Automotive from its inception through and after May 6, 2005. Taylor was also an officer of the company, serving initially as its secretary and then as its president, an office he held through and after May 6, 2005.

Automotive entered into a dealer agreement, dated November 10, 2003, with Centrix Financial, LLC[2] (the "Dealer Agreement"). Under the Dealer Agreement, appellee First Community Credit Union ("First Community") was granted the right to purchase retail installment contracts from Automotive; Centrix was to act as First Community's agent for the procurement, credit assessment, collection, and servicing of automobile loans. Pursuant to the Dealer Agreement, First Community purchased four retail automobile installment contracts in December 2004 and January 2005 and paid the amounts financed under the contracts to Automotive.

Automotive breached its contractual obligations to First Community by failing to provide good title to the motor vehicles Automotive sold to its customers under the installment contracts as assigned to First Community. The failure to provide good and marketable title to each vehicle purchaser and a title with a valid lien in favor of First Community not only breached Automotive's obligations to both the vehicle purchaser and lender, but also provided the vehicle purchaser with a defense against the credit union as the holder of the retail installment agreement. Under the four contracts purchased from Automotive, certificates of title were never delivered as agreed.

Automotive also breached its warranties, under paragraph 3.1(b) of the Dealer Agreement, requiring that a valid first lien would be obtained in favor of First Community on any vehicles sold and transferred under the retail installment contracts and that the contract would not be subject to any claims or defenses of vehicle purchasers. Automotive further breached section 3.2 of the Dealer Agreement, providing that if any listed warranty or agreement were breached, Automotive would repurchase the contracts from First Community for the remaining balances due under the contracts within five days of demand.

After default, and allowing for all credits and offsets, there remained due an unpaid aggregate balance of $54,741.18 from the four installment contracts. In March

1. *See* TEX R. CIV. P. 263 ("Parties may submit matters in controversy to the court upon an agreed statement of facts filed with the clerk ... and such agreed statement signed and certified by the court to be correct and the judgment rendered thereon shall constitute the record of the cause.").

2. Centrix Financial, LLC was not a party at trial and is not a party on appeal.

2007, First Community demanded that Automotive repurchase the defaulted retail installment contracts for the amounts due; as of the date of trial, Automotive had failed to do so. Taylor, as president of the company, received the demand but neither he nor any other person on behalf of Automotive responded.

First Community brought suit against Automotive and Taylor seeking judgment for $54,741.18 in actual damages, attorney's fees, court costs, and prejudgment and postjudgment interest. First Community claimed that Taylor should be held personally liable for these debts under section 171.255 of the Texas Tax Code.[3] Automotive failed to appear and answer. After considering the parties' agreed statement of facts, the trial court rendered judgment that First Community recover the sums requested from Automotive and Taylor jointly and severally. Taylor now appeals from the trial court's judgment.

## II. ISSUES AND ANALYSIS

### A. Did the trial court reversibly err by not filing findings of fact and conclusions of law?

 As a threshold matter, Taylor asserts in his first issue that the trial court erred by failing to file findings of fact and conclusions of law despite his timely request. Although the record in this case contains an agreed and undisputed statement of facts, upon which the parties held a trial on the merits, the record does not contain an agreed statement certified by the trial court to be correct. *See* TEX.R. CIV. P. 263 (requiring a signed agreed statement to be certified by the court to be correct). Texas Rule of Civil Procedure 263 governs the submission of matters in

controversy on an agreed statement of facts. *See id.* Strict compliance with this rule is not required. *See Abbott v. Blue Cross & Blue Shield of Tex., Inc.*, 113 S.W.3d 753, 757 (Tex.App.-Austin 2003, pet. denied). When, as in this case, the record indicates that the trial court heard the case on stipulated facts, a reviewing court may treat the case as one involving an agreed statement of facts under Rule 263. *See id.; State Farm Lloyds v. Kessler*, 932 S.W.2d 732, 735 (Tex.App.-Fort Worth 1996, writ denied). In an appeal from a trial court's judgment on an agreed case, the only issue on appeal is whether the trial court properly applied the law to the agreed facts. *Abbott*, 113 S.W.3d at 757. As to the facts, this court is limited in its consideration to the agreed facts. *See id.* We conclude that the trial court did not reversibly err by failing to file findings of fact and conclusions of law. *See id.* Therefore, we overrule Taylor's first issue.

### B. Did the trial court err by concluding that the director and officer is personally liable?

In his second issue, Taylor asserts that the trial court erred by holding him personally liable under section 171.252, entitled "Effects of Forfeiture," and section 171.255, entitled "Liability of Directors and Officers." Under section 171.252, if the corporate privileges of a corporation are forfeited, "each director or officer of the corporation is liable for a debt of the corporation as provided by section 171.255 of this code." *See* TEX. TAX CODE ANN. § 171.252(2) (Vernon 2008). As relevant in this case, section 171.255 provides,

> If the corporate privileges of a corporation are forfeited for the failure to file a report or pay a tax or penalty, each

---

**3.** Unless otherwise noted, all references to a "section" or a "chapter" pertain to the Texas Tax Code.

director or officer of the corporation is liable for each debt of the corporation that is created or incurred in this state after the date on which the report, tax, or penalty is due and before the corporate privileges are revived....

TEX. TAX CODE ANN. § 171.255(a) (Vernon 2008).

■ Taylor and First Community stipulated that Automotive's franchise tax report was due on September 7, 2004, was never filed, and that corporate privileges were never revived. *See id.* Therefore, Taylor, as director and officer of Automotive, is liable for each "debt" of the corporation that was created or incurred after September 7, 2004, the date on which the franchise tax report was due. *See id.* As relevant to this case, a "debt" under section 171.255(a) is defined as "any legally enforceable obligation measured in a certain amount of money which must be performed or paid within an ascertainable period of time or on demand." Act of May 30, 1987, 70th Leg., R.S., ch. 324, § 1, 1987 Tex. Gen. Laws 1734, 1735 (defining "debt" as used in chapter 171), *repealed by* Act of May 2, 2006, 79th Leg., 3rd C.S., ch. 1, § 5, 2006 Tex. Gen. Laws 1, 23 (effective January 1, 2008).

Taylor stipulated that Automotive breached the Dealer Agreement after September 7, 2004, resulting in the damages awarded by the trial court. Taylor, however, asserts that these breach-of-contract damages "relate back" to November 2003, when Automotive executed the Dealer Agreement. Therefore, Taylor argues, this debt was not "created or incurred" after September 7, 2004, and Taylor cannot be liable under sections 171.252 and 171.255. This "relation back" doctrine is the only argument Taylor asserts under his second issue. Taylor cites three cases in support of this argument, and we now examine the holdings in these cases. *See*

*Schwab v. Schlumberger Well Surveying Corp.*, 145 Tex. 379, 198 S.W.2d 79, 81–82 (1946); *Serna v. State*, 877 S.W.2d 516, 519 (Tex.App.-Austin 1994, writ denied); *Curry Auto Leasing, Inc. v. Byrd*, 683 S.W.2d 109, 110–12 (Tex.App.-Dallas 1984, no writ).

In *Schwab*, the Supreme Court of Texas held that corporate officers and directors were not individually liable under a predecessor statute to section 171.255. *See Schwab*, 198 S.W.2d at 81–82. The issue under that statute was whether the corporate "debt" was "created or incurred" after a particular date. *See id.* The *Schwab* court held that the terms "created" and "incurred" are unambiguous. *See id.* at 81. The unambiguous meaning of "create" is "to bring into existence something which did not exist," and the unambiguous meaning of "incur" is "brought on," "occasioned," or "caused." *See id.* The *Schwab* court did not address the meaning of the statutory term "debt."

In *Schwab*, the corporation executed an original promissory note as evidence of a debt owed to Schlumberger Well Surveying Corporation. *See id.* at 80. The corporation then executed a series of six renewal notes, after which the corporation forfeited its right to do business in Texas. *See id.* After this forfeiture, the corporation executed another renewal note for the same indebtedness. *See id.* The issue in *Schwab* was whether the debt in question was created or incurred after the forfeiture date because the final promissory note was executed after this date. *See id.* The *Schwab* court stated that the statute in question was penal in nature and should be strictly construed so that it is not extended beyond the clear import of its language. *See id.* at 81. Significantly, the *Schwab* court did not articulate any "relation back" doctrine; instead, the high court looked to Texas law regarding prom-

issory notes. *See id.* at 81–82. Under that law, a renewal note does not create a new debt; rather, the renewal note is new evidence of the existing debt that is being renewed. *See id.* Therefore, the *Schwab* court held that, even though the renewal note was executed after the forfeiture date, that note created no debt but was new evidence of the debt that was created before the forfeiture date. *See id.* The *Schwab* court held that because the debt made the subject of the suit was created before the forfeiture date, the officers and directors were not individually liable. *See id.* We conclude that in *Schwab* the Supreme Court of Texas did not speak to and did not establish the "relation back" doctrine upon which Taylor relies.

In the *Byrd* case, a corporation, as lessee, entered into a motor vehicle lease on December 1, 1980. *See Byrd,* 683 S.W.2d at 110. Before the relevant forfeiture date, the lessee corporation breached the lease, and the lessor terminated the lease and repossessed the leased vehicle. *See id.* After the forfeiture date, the lessor sold the vehicle, resulting in a deficiency amount, for which the lessor sued the lessee and its officers. *See id.* at 111. In *Byrd,* the Fifth Court of Appeals had to decide whether the lessors' damages constituted a debt that was created or incurred after the forfeiture date for the purposes of the version of Chapter 171 that was then in effect. *See id.* at 110–11. The *Byrd* court cited *Schwab* and relied on *Schwab's* statement that such statutes should be strictly construed. *See id.* at 112. The *Byrd* court stated that "the statute does not impose liability on the officers of [the lessee corporation] if the obligations . . . that create or incur the debt in

question pre-existed the forfeiture." *Id.* The *Byrd* court then concluded "that performance or implementation of the contractual provisions relate back to and are authorized at the time of execution of the contract." *Id.*

Though the *Byrd* court noted that the lessee breached the lease and the lessor terminated the lease before the forfeiture date, the court emphasized that the debt in question related back to the execution of the lease on December 1, 1980 and therefore was created and incurred before the forfeiture date. *See id.* Similarly, Taylor asserts on appeal that, even though the installment contracts were executed after September 7, 2004, and even though Automotive breached the Dealer Agreement and caused First Community's damages after this date, the debt in question relates back to the execution of the Dealer Agreement on November 10, 2003. The *Byrd* case supports Taylor's argument.[4]

Though not cited by either party on appeal, we address this court's opinion in *River Oaks Shopping Center v. Pagan. See* 712 S.W.2d 190 (Tex.App.-Houston [14th Dist.] 1986, writ ref'd n.r.e.). In *Pagan,* a corporation, as lessee, executed a lease on April 11, 1978. *See id.* at 191. The lessee forfeited its right to do business in Texas on September 15, 1979, and the breach of the lease upon which the lessor sued did not occur until August 1980. *See id.* Nonetheless, a prior panel of this court adopted the "relation back" doctrine from *Byrd,* concluding that the debt from the post-forfeiture breach and damages related back to April 11, 1978, the execution date of the lease. *See id.* at 191–92. Therefore, the *Pagan* court concluded

---

4. Taylor also cites the *Serna* case, in which the court describes the "relation back" doctrine from the *Byrd* case. *See Serna,* 877 S.W.2d at 519. However, the *Serna* court held that the "relation back" doctrine did not

apply to the case before that court, which involved debts arising from statutory liability. *See id.* Therefore, the parts of *Serna* upon which Taylor relies are obiter dicta.

that, under section 171.255, the corporate debt was created and incurred on April 11, 1978, and the officers of the lessee corporation were not individually liable. *See id.* The *Pagan* case supports Taylor's argument under the "relation back" doctrine.

■■ Absent a decision from a higher court or this court sitting en banc that is on point and contrary to the prior panel decision or an intervening and material change in the statutory law, this court is bound by the prior holding of another panel of this court. *See Chase Home Fin., L.L.C. v. Cal W. Reconveyance Corp.,* 309 S.W.3d 619, 630 (Tex.App.-Houston [14th Dist.] 2010, no pet.). Research has revealed no contrary decision from a higher court or from this court sitting en banc. However, a year after the *Pagan* opinion issued, the Texas Legislature enacted a definition of "debt" as used in section 171.255.[5] *See* Act of May 30, 1987, 70th Leg., R.S., ch. 324, § 1, 1987 Tex. Gen. Laws 1734, 1735 (defining "debt" as used in chapter 171) (repealed effective 2008). Under this definition, which applies to the case now before this court, a "debt" is "any legally enforceable obligation measured in a certain amount of money which must be performed or paid within an ascertainable period of time or on demand." *Id.* The *Schwab* court stated that a statute like section 171.255 should be strictly construed so that it is not extended beyond the clear import of its language. *See Schwab,* 198 S.W.2d at 81. However, the clear import of the definition added in 1987 was that a debt is a legally enforceable obligation *measured in a certain amount of money.* Under the "relation back" doctrine, the execution of the Dealer Agree-

ment on November 10, 2003, would create a debt under section 171.255, even though no party had breached the agreement and even though there was no money owed under the agreement at that time. This result would conflict with the statutory definition of "debt" enacted by the legislature in 1987. The legislative addition of this definition conflicts with the relation back doctrine followed by the *Pagan* court and constitutes an intervening and material change in the statutory law. Therefore, we are not bound to follow the prior panel decision in *Pagan.* *See Chase Home Fin.,* 309 S.W.3d at 630.

■ The "relation back" doctrine is not required by *Schwab* or *Byrd* and is inconsistent with the unambiguous language of the applicable definition of "debt" in Chapter 171. Therefore, we conclude that the "relation back" doctrine should not be applied in this case. Inasmuch as Taylor's only argument under his second issue is premised on the applicability of the "relation back" doctrine and this doctrine does not apply, we overrule Taylor's second issue.[6]

In his third issue, Taylor asserts that the evidence is legally and factually insufficient to support a finding that Taylor is personally liable under sections 171.252 and 171.255. However, Taylor's only argument as to why the evidence is legally and factually insufficient is premised on the applicability of the "relation back" doctrine, which we already have held does not apply. Presuming for the sake of argument that Taylor can assert legal and factual insufficiency arguments on appeal from a judgment on an agreed statement of facts, Taylor's argument fails for the

---

**5.** Previously, the Texas Legislature had not defined this term.

**6.** In any event, the trial court did not err in impliedly concluding that the debts in ques-

tion were created or incurred after September 7, 2004, and that Taylor is liable for these debts under section 171.255.

same reasons given under our analysis of the second issue. Accordingly, we overrule Taylor's third issue.

### III. CONCLUSION

The trial court did not reversibly err by failing to file findings of fact and conclusions of law. Under the applicable version of Chapter 171, the "relation back" doctrine does not apply to this case. Accordingly, we affirm the trial court's judgment.