# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-13-00176-CV

**Anderson Petro-Equipment, Inc. and Curtis Ray Anderson, Appellants**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 201ST JUDICIAL DISTRICT NO. D-1-GV-09-002023, HONORABLE STEPHEN YELENOSKY, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

The State of Texas sued Anderson Petro-Equipment, Inc. (Anderson Petro) and Curtis Ray Anderson to recover money spent to plug the Kirby-Milhome (22449) Lease Well No. 1 K ("the Kirby-Milhome well"), an inactive well located in the Blackhome (Wilcox 8540) Field in Tyler County. *See* Tex. Nat. Res. Code § 89.083; Tex. Tax Code § 171.255. The trial court granted the State's motion for summary judgment and ordered that Anderson Petro and Anderson were jointly and severally liable to the State for $75,930 in reasonable plugging expenses along with attorneys' fees and pre- and post-judgment interest. In two issues, Anderson Petro and Anderson challenge the judgment on the grounds that (1) Anderson is not personally liable for the debts of Anderson Petro and (2) the State failed to establish the existence of a corporate debt of Anderson Petro arising before its dissolution. We will affirm.

## BACKGROUND

Anderson Petro was the operator of the Kirby-Milhome well, which ceased production in July 2002. In July 2003, after Anderson Petro had stopped producing the well for twelve months yet failed to plug it, the well became noncompliant with the Texas Natural Resources Code and the Texas Railroad Commission's regulations. The well also had a history of other instances of noncompliance with applicable rules.

Anderson Petro failed to pay its 2004 franchise taxes when due on May 17, 2004. This resulted in the forfeiture of Anderson Petro's corporate privileges on October 13, 2004, *see* Tex. Tax Code § 171.251 (comptroller shall forfeit corporate privileges of corporation if corporation fails to pay franchise taxes), and the forfeiture of its corporate charter on February 11, 2005, *see id.* § 171.309 (secretary of state may forfeit charter upon receiving certification from comptroller that 120 days have passed since corporation forfeited its corporate privileges and corporation has not revived its privileges). Consequently, as of February 11, 2005, Anderson Petro was a "dissolved corporation" for purposes of former Texas Business Corporation Act (BCA) section 7.12, a survival statute that provided the exclusive means by which an injured party could assert a claim against a dissolved corporation that has ceased to exist for other purposes.[1] *See* former Tex. Bus. Corp. Act

---

[1] On January 1, 2010, the Texas Business Corporation Act expired and was replaced by the Texas Business Organizations Code. *See* Tex. Bus. Corp. Act art. 11.02(B) ("This Act expires January 1, 2010."). With the exception of filing fee requirements, the provisions of the Business Organizations Code did not apply until January 1, 2010 to entities formed before January 1, 2006, such as Anderson Petro, unless the entity elected early adoption. *See* Tex. Bus. Org. Code §§ 402.001-.005. There is no indication in the record that Anderson Petro elected early adoption. At the time of trial, therefore, the operative statute was the BCA. In any event, the Business Organizations Code made no substantive changes to BCA article 7.12. *See id.* §§ 11.001, 11.356; *see also id.* §§ 11.051, 11.055, 11.152, 11.254, 11.311, 11.351, 11.357-.359.

art. 7.12(F)(1)(e) (corporation that has forfeited its charter pursuant to Tax Code is "dissolved corporation" unless and until forfeiture has been set aside); *Hunter v. Fort Worth Capital Corp.*, 620 S.W.2d 547, 549-51 (Tex. 1981).[2]

As a result of Anderson Petro's failure to maintain the Kirby-Milhome well in compliance with the Texas Natural Resources Code and Commission rules, the Commission initiated administrative proceedings in an attempt to force Anderson Petro to bring the well into compliance. Anderson Petro still failed to bring the well into compliance. On November 28, 2006, the Commission sent Anderson Petro notice to plug the well, as prescribed by Natural Resources Code section 89.043. *See* Tex. Nat. Res. Code § 89.043(c) (not later than 30th day before date Commission enters into contract to plug delinquent inactive well, it shall send notice directing operator to plug well). The notice informed Anderson Petro of its right to request a hearing regarding its obligation to plug the well and stated that if no hearing was requested, the Commission "may enter into a contract to plug the well on or after the thirty-first day from the date of this notice." Anderson Petro did not respond, and on April 14, 2009, the Commission spent $75,930 in state funds to plug the well. *See id.* § 89.043(c)(1) (Commission may plug well unless operator requests hearing not later than 10th day after date operator receives notice).

In November 2009, the State sued Anderson Petro and Anderson (an Anderson Petro officer) seeking to recover the money spent to plug the well. The claim against Anderson Petro was

---

[2] At common law, dissolution terminated the legal existence of a corporation, and it could neither sue nor be sued; all legal proceedings to which it was a party abated. *See Hunter v. Fort Worth Capital Corp.*, 620 S.W.2d 547, 549-50 (Tex. 1981); *Suarez v. Sherman Gin Co.*, 697 SW.2d 17, 19 (Tex. App.—Dallas 1985, writ ref'd n.r.e.).

brought pursuant to Natural Resources Code section 89.083, which provides that if the Commission plugs a well pursuant to Natural Resources Code section 89.043, the State has a cause of action for all reasonable expenses incurred in plugging or replugging the well that are not recovered through the sale of well and well-site equipment or otherwise reimbursed to the Commission. *See id.* § 89.083(f). The claim against Anderson was brought pursuant to Tax Code section 171.255, which provides:

> If the corporate privileges of a corporation are forfeited for the failure to file a report or pay a tax or penalty, each director or officer of the corporation is liable for each debt of the corporation that is created or incurred in this state after the date on which the report, tax, or penalty is due and before the corporate privileges are revived.

Tex. Tax Code § 171.255(a).

On the State's motion, the trial court rendered summary judgment that the State recover from Anderson Petro and Anderson, jointly and severally, $75,930 in reasonable plugging expenses, $13,803.66 in pre-judgment interest, and $12,312.50 in attorneys' fees. Anderson Petro and Anderson perfected this appeal.

## DISCUSSION

In two issues, Anderson Petro and Anderson challenge the trial court's summary judgment. In their first issue, appellants contend the court erred in rendering judgment against Anderson individually because the corporate debt the State sought to recover was not "created or incurred" prior to the date Anderson Petro's charter was forfeited on February 11, 2005. Appellants contend that in order for Anderson to be individually liable, the debt must have been created or

incurred at a point in time between the date Anderson Petro's franchise tax status became delinquent (May 18, 2004) and the date its corporate charter was forfeited (February 11, 2005).[3] In their second issue, appellants contend the trial court erred in granting summary judgment against Anderson Petro because the State failed to establish the existence of a pre-dissolution claim for which Anderson Petro could be held liable. *See* former Tex. Bus. Corp. Act art. 7.12(A)(2) (dissolved corporation continues corporate existence for three years from date of dissolution for purpose of permitting survival of any *existing claim* by or against it), 7.12(C) (corporation shall not be liable for any claim other than *existing claim*), 7.12(F)(3) (term "existing claim" in this article means claim that existed before dissolution and is not otherwise barred by limitations or contractual obligation incurred after dissolution). We will address appellants' second issue first.

### Anderson Petro's liability for plugging costs

Former BCA article 7.12 was a survival statute that provided the exclusive means by which an injured party could assert a claim against a dissolved corporation that had ceased to exist for other purposes. *Hunter*, 620 S.W.2d at 549-51. A corporation that had forfeited its charter pursuant to the Tax Code was included in former article 7.12's definition of a "dissolved

---

[3] Anderson does not contend in this appeal that section 171.255 may not ever be used to impose individual liability for plugging costs. Rather, his argument is limited to the contention that such liability was extinguished when Anderson Petro's corporate charter was forfeited. Consequently, this Court is not confronted in this appeal with the question of whether section 171.255 could impose individual liability on an officer for costs incurred by the State in plugging a well after a corporation has failed to pay its franchise taxes resulting in the forfeiture of its corporate privileges. *See Cain v. State*, 882 S.W.2d 515 (Tex. App.—Austin 1994, no writ); *Jonnet v. State*, 877 S.W.2d 520 (Tex. App.—Austin 1994, writ denied); *Serna v. State*, 877 S.W.2d 516 (Tex. App.—Austin 1994, writ denied). The question presented here is whether, assuming such potential liability exists, it is extinguished when the corporation subsequently forfeits its charter.

5

corporation" unless and until the forfeiture has been set aside. *See* former Tex. Bus. Corp. Act art. 7.12(F)(1)(e). Former article 7.12(A) provided that:

> [a] dissolved corporation shall continue its corporate existence for a period of three years from the date of dissolution, for the following purposes:
>
> . . . .
>
> > (2) permitting the survival of any existing claim by or against the dissolved corporation; . . . .

*Id.* art. 7.12(A)(2). The term "existing claim" was defined by the statute to mean "a claim that existed before dissolution and is not otherwise barred by limitations or a contractual obligation incurred after dissolution." *Id.* art. 7.12(F)(3). A dissolved corporation is not liable for a post-dissolution claim. *See Hunter*, 620 S.W.2d at 553; *Landrum v. Thunderbird Speedway, Inc.*, 97 S.W.3d 756, 758-59 (Tex. App.—Dallas 2003, no pet.). Appellants argue that the State's claim for reimbursement of the plugging costs for the Kirby-Melhome well is a post-dissolution claim for which the corporation cannot be held liable under former article 7.12. We disagree.

Under former BCA article 7.12, a "claim" was "a right to payment, damages, or property, whether liquidated or unliquidated, accrued or contingent, matured or unmatured." *Id.* art. 7.12(F)(2). Thus, the statute expressly defined the term broadly to include contingent, unliquidated, and unmatured claims. A "contingent liability" is one that is not now fixed, but which will become so upon the occurrence of some future event. *See United States v. Leal*, 30 F.3d 577, 586 (5th Cir. 1994) (quoting *Black's Law Dictionary* 321). Contingent liabilities include obligations that are reasonably anticipated but that have not yet actually been incurred. *See Anderson Petro-Equip., Inc.*

6

*v. State*, 317 S.W.3d 812, 817 (Tex. App.—Austin 2010, pet. denied) (*Anderson Petro I*) (citing *Arch Petroleum, Inc. v. Sharp*, 958 S.W.2d 475, 478 (Tex. App.—Austin 1997, no pet.)). As this Court held in *Anderson Petro I*:

> Once the actions that may give rise to future liability have occurred, the contingent claim comes into existence. Article 7.12 requires only that the actions giving rise to the liability occur before dissolution. If they do, the statute plainly provides for the survival of a party's right to assert claims arising out of or resulting from those actions even after the corporation's dissolution.

*Id.* The question raised by appellants' second issue, then, is whether the actions that ultimately gave rise to the claims asserted against Anderson Petro by the State in this suit occurred before Anderson Petro's dissolution on February 11, 2005. If they did, the State's claims existed as contingent liabilities of Anderson Petro, and as unmatured and unliquidated claims against it, prior to its dissolution.

It is undisputed that the Kirby-Milhome well had no production after July 2002 and had not been plugged until the Commission plugged it in April 2009. Texas law requires that operators plug their inactive wells or otherwise place them in compliance with Commission rules. Tex. Nat. Res. Code § 89.011. The Commission's rules require that operators commence plugging within one year after drilling operations cease on dry or inactive wells. 16 Tex. Admin. Code § 3.14 (2013) (Railroad Comm'n of Tex. Oil & Gas Div., Plugging). If the operator fails to plug the well, the Commission may do so. *See* Tex. Nat. Res. Code § 89.043(a). While we agree that the Commission's *cause of action* for recovery of plugging costs was not *ripe* until the Commission actually plugged the well, *see id.* § 89.083(f), the *actions giving rise* to that cause of action—the

operator's failure to plug the Kirby-Milhome well within the time required by Commission rules—occurred beginning in July 2003, well before Anderson Petro's corporate charter was forfeited and it became a "dissolved corporation" under former BCA article 7.12. *See Anderson Petro-Equip.*, 317 S.W.3d at 817. Because the actions giving rise to the liability occurred before Anderson Petro's dissolution, former article 7.12 provided for the survival of the State's claim for reimbursement of reasonable expenses incurred in plugging the well after dissolution of the corporation. *Id.*[4] We overrule appellants' second issue.

### Anderson's individual liability

In their first issue, appellants contend the trial court erred by imposing liability for the Commission's plugging costs on Anderson individually pursuant to Tax Code section 171.255. *See* Tex. Tax Code § 171.255(a). That section of the Tax Code provides that an officer of a corporation whose corporate privileges have been forfeited for failure to file a report or pay a tax or

---

[4] This conclusion is not inconsistent with this Court's opinion in *Strata Resources v. State*, 264 S.W.3d 832 (Tex. App.—Austin 2008, no pet.). In that case, the State sued Strata Resources and its general partners seeking reimbursement for the costs of plugging an inactive well operated by Strata. After the State filed its suit, but before the trial court rendered judgment for the State, Epps, one of Strata's general partners, filed for and was discharged from Chapter 7 bankruptcy. On appeal Epps challenged the judgment rendered against him, asserting that the cost of plugging the wells was a pre-petition debt that was discharged by his discharge from bankruptcy. This Court observed that the claim was discharged only if it arose before the bankruptcy petition was filed. Relying on its construction of the bankruptcy code's definition of a "claim," which is substantially similar to the definition contained in the BCA, this Court rejected the State's argument that "the right to payment exists if and only if the Commission plugs or replug [sic] a well." *Id.* at 842. The Court noted that the State had sent its notice directing the operator to plug the well more than 30 days before the operator filed its bankruptcy petition and held that this was sufficient to establish that the claim for reimbursement was a contingent claim existing prior to the date the operator filed for bankruptcy. The Court did not need to consider, as we do in the present case, whether the claim existed at an even earlier time.

penalty is liable for corporate debts "created or incurred in this state *after the date* on which the report, tax, or penalty is due *and before* the corporate privileges are revived." *Id.* (emphases added). Appellants concede that, for purposes of Tax Code section 171.255(a), the corporate "debt" in question was created or incurred on April 14, 2009, long after Anderson Petro's franchise taxes were due and long after its corporate privileges were forfeited. Appellants do not argue that Anderson's individual liability could not have arisen under that statute *at all*; rather, they assert that his liability, if any, ceased to exist once Anderson Petro's corporate charter was forfeited on February 11, 2005. We understand appellants to argue that because a corporation could not be liable for post-dissolution debts, neither could an individual officer of that corporation. This argument, however, seems to conflate the requirements for corporate liability contained in former BCA section 7.12, which addresses a *corporation's* liability for "existing claims," with the Tax Code requirements for an officer's *individual* liability for corporate "debts." The statute governing an officer's liability for corporate debts, Tax Code section 171.255, does not make any reference to forfeiture of the corporate charter. The statute does not contain any language suggesting that an officer is liable only for debts incurred during the window of time after the corporation has failed to pay its franchise taxes but before it has forfeited its corporate charter. We decline to read such a requirement into the statute. *See City of Rockwall v. Hughes*, 246 S.W.3d 621, 630 (Tex. 2008) ("[C]hanging the meaning of the statute by adding words to it, we believe, is a legislative function, not a judicial function."). Section 171.255(a) clearly and unambiguously states that an officer is liable for debts that were incurred during the time period after the relevant tax was due (for which the corporate

9

privileges were later forfeited) and before those privileges were revived.[5] Here, the corporate debt for which Anderson was held liable was created or incurred after the tax was due, and the corporate privileges were never revived. We overrule appellants' first issue.

**CONCLUSION**

Having overruled appellants' two appellate issues, we affirm the trial court's judgment.

_____

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Pemberton and Field

Affirmed

Filed: October 22, 2013

---

[5] We are unpersuaded by appellant's reliance on *Isbell v. Gulf Union Oil Co.*, 209 S.W.2d 762 (Tex. 1948). That case addresses the extent to which a corporation is liable for payment of franchise taxes accruing after it has forfeited its "right to do business" in the state under then-controlling statutes. The court observed that an entry in the Secretary of State's records relating to a corporation of the words "right to do business forfeited" only meant that the corporation could not sue or defend in courts of the state. *Id.* at 764. The court held that such an entry did not mean that the corporation could no longer do business in the state and, consequently, it continued to incur franchise tax liability for business conducted before it actually lost its right to do business as a result of dissolution or forfeiture of its charter. *Id. Isbell* does not support the proposition that existing franchise tax liability "ceases to exist" after forfeiture of the charter, nor does it even address post-dissolution officer and director liability under the Tax Code.