**VIAJES GERPA, S.A., Appellant**

v.

**Seyed Reza FAZELI and Dubai Financial, LLC, Appellees**

NO. 14–15–00608–CV

Court of Appeals of Texas, Houston (14th Dist.).

Opinion Filed December 29, 2016

Rehearing Overruled March 14, 2017

Kelley Maria Keller, Candace L. Smith, Houston, TX, for Appellant.

Tanya Nicole Garrison, Barney Louis Stagner Jr., Houston, TX, for Appellees.

Panel consists of Chief Justice Frost and Justices McCally and Brown.

## OPINION

Marc W. Brown, Justice

After a trial involving allegations of corporate veil-piercing, breach of contract, fraudulent transfer of assets, and conspiracy, the jury returned a verdict in favor of plaintiff Viajes Gerpa, S.A. and against defendants Seyed (Ali) Reza Fazeli· and Dubai Financial, LLC. The trial court originally rendered judgment in favor of Viajes Gerpa, awarding damages against Ali. The final judgment also ordered that Viajes Gerpa recover court costs from Ali and Dubai Financial. Ali and Dubai Financial filed a motion and supplemental motion to disregard jury findings and enter judgment notwithstanding the verdict (JNOV), and a motion for new trial, motion to reconsider, and motion to modify. The trial court granted these motions, vacated ·its judgment, and signed a new judgment that Viajes Gerpa take nothing on its claims against Ali and Dubai Financial.

On appeal, Viajes Gerpa argues that the trial court erred by disregarding all the jury findings involving Ali and Dubai Financial and by refusing to enter judgment on the verdict. Viajes Gerpa also contends that the trial court erred by refusing to enter judgment on its claim against Ali under section 171.255(a) of the Texas Tax Code. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In 2006, certain Mexican travel agencies purchased tickets for the World Cup Soccer tournament in Germany from various ticket fulfillment websites, including Onlinetickets.com, operated by The Ticket Company.[1] After the travel agencies did not receive many of the tickets or refunds for them, the agency plaintiffs, including Viajes Gerpa,[2] brought suit against corporate defendants, including The Ticket Company,[3] and individual defendants, in-

---

1. The Ticket Company maintained operations in Houston, Texas, and Las Vegas, Nevada.

2. There were a total of 16 agency plaintiffs.

3. The other corporate defendants were The Ticket Company International, Inc.; Onlinetickets.com, LLC; and The Ticket Company Holdings, Inc. None of these corporate defendants is a party on appeal.

cluding Ali.[4]

In April 2007, the agency plaintiffs, corporate defendants, and individual defendants entered into a Master Settlement Agreement and Release (MSA). Under the MSA, the corporate defendants agreed to pay $300,000 upfront in three $100,000 payments to the agency plaintiffs on a pro rata basis.[5] In addition, the corporate defendants agreed to pay to the agency plaintiffs 50% of their net cash flow, also on a pro rata basis. Net cash flow payments were to continue until the earlier of (1) full payment of the agreed judgment amount, which for Viajes Gerpa was $1,176,500, or (2) four years and six months.

Pursuant to the MSA, the individual defendants [6] executed employment agreements that covered the same four-year, six-month period and made the agency plaintiffs third-party beneficiaries. Under the MSA, the individual defendants "who execute employment agreements" represented and warranted that they would discharge their duties and responsibilities to the corporate defendants faithfully; use their best efforts to promote the interests of the corporate defendants and devote their full business time, energies, and skill to the corporate defendants; not voluntarily adopt any partial or complete liquidation or reorganization plan absent consent of a majority in the dollar amount of claims held by the agency plaintiffs; and comply with their employment agreements.

The corporate defendants were to execute agreed judgments in favor of the agency plaintiffs for the pro rata amounts listed in the MSA. Only in the event of default would such judgments be recorded or otherwise executed. The agency plaintiffs were to execute agreed orders dismissing their claims against the individual defendants with prejudice. In May 2007, the parties to the underlying action filed an agreed motion to dismiss with prejudice all claims made or asserted against the individual defendants. Also in May 2007, the trial court entered an agreed final judgment against The Ticket Company and the other corporate defendants in favor of Viajes Gerpa in the amount of $1,176.500 (the 2007 judgment).

The Ticket Company paid Viajes Gerpa its initial upfront payments totaling $63,000 under the MSA. The Ticket Company did not pay any additional amounts to Viajes Gerpa based on net cash flow under the MSA. In October 2008, and again in August, September, and October 2011, The Ticket Company received notice of default from Viajes Gerpa. In September 2011, Ali received notice of individual default from Viajes Gerpa. Upon the declaration of default, the parties were to submit to nonbinding mediation before taking any action, including to record or enforce the agreed judgments. Mediation was to take place within 30 days of the receipt of the notice of default by the defaulting party. If the meditation "failed," then the nondefaulting parties could take actions to enforce the MSA, including legal action to enforce the agreed judgments. In October 2011, Ali and The Ticket Company received notice that Viajes Gerpa demanded that The Ticket Company submit to mediation. No mediation ever took place.

In January 2010, The Ticket Company entered into an Asset Purchase Agreement, a Bill of Sale, and an Assignment and Assumption Agreement with Dubai

---

**4.** The other individual defendants were Christopher Toy and Andrew Worthington. Neither Toy nor Worthington is a party on appeal.

**5.** Viajes Gerpa's pro rata share was 21%.

**6.** Worthington was not required to enter into an employment agreement.

Financial. Under these agreements, the Ticket Company transferred the domain names www.onlinetickets.com, www.onlineticket.com, and www.ticketcompany.com, the trade name of Onlinetickets.com, and four phone numbers to Dubai Financial for the purchase price of $10,000. The Ticket Company also assigned, and Dubai Financial assumed, interests and obligations in connection with real property leases in Houston and Las Vegas, and with a license agreement. These agreements were executed by Ali as President and Vice President of The Ticket Company and by Nezhat Malek Fazeli[7] as Partner and Member of Dubai Financial.

Viajes Gerpa filed an abstract of the 2007 judgment in November 2011. In December 2011, Viajes Gerpa filed its original petition in this case. In its live petition, Viajes Gerpa alleged claims for breach of contract against Ali and Christopher Toy, and against The Ticket Company.[8] Viajes Gerpa alleged that under section 171.255 of the Texas Tax Code Ali and Toy were liable individually for the 2007 judgment because The Ticket Company forfeited its good standing for nonpayment of franchise taxes. Viajes Gerpa further alleged that Ali was liable individually for the debts of The Ticket Company under section 21.223 of the Texas Business Organizations Code. Viajes Gerpa alleged that Ali, Nezhat, The Ticket Company, and Dubai Financial conspired to commit fraud in the transfer of assets from The Ticket Company to Dubai Financial, and sought to recover exemplary damages. Viajes Gerpa also alleged that it was entitled to a constructive trust on the assets of Dubai Financial or rescission of the sale of assets by The Ticket Company to Dubai Financial.

At trial, the jury found the following:

(1) Ali was responsible for the conduct of The Ticket Company, Inc.;

(2) Ali breached the MSA;

(3) The Ticket Company breached the MSA;

(4) Due to Ali's breach, Viajes Gerpa should be awarded $1,113,500 in damages (the difference that Viajes Gerpa would have received under the MSA if Ali had complied minus any amounts that Viajes Gerpa did receive);

(5) The transfer of The Ticket Company's assets to Dubai Financial was fraudulent as to Viajes Gerpa;

(6) Dubai Financial did not purchase the transferred assets from The Ticket Company in good faith;

(7) Due to the fraudulent transfer Viajes Gerpa should be awarded $700,000 in damages as the value for which The Ticket Company would have sold the assets in an arms'-length transaction; and $150,000 in damages as the amount necessary to satisfy Viajes Gerpa's claim;

(8) Ali and Dubai Financial, but not Nezhat, engaged in a conspiracy that damaged Viajes Gerpa;

(9) There was clear and convincing evidence that the harm to Viajes Gerpa resulted from the fraudulent transfer by The Ticket Company;

(10) A sum of $350,000 in exemplary damages should be assessed against The Ticket Company and awarded to Viajes Gerpa; and

(11) Viajes Gerpa should be awarded its reasonable and necessary attor-

---

7. Nezhat is Ali's mother.

8. The trial court rendered a take-nothing summary judgment in favor of Toy; which

Viajes Gerpa does not appeal. The parties do not dispute that The Ticket Company was not served and did not appear at trial.

ney's fees in the amount of $113,250 for representation in the trial court; $15,000 for representation in the court of appeals; $15,000 for representation at the petition for review stage, $15,000 for representation at the merits briefing stage, and $15,000 for representation through oral argument and completion of proceedings in the Supreme Court of Texas.

Viajes Gerpa moved for entry of judgment on the verdict. Ali and Dubai Financial filed their opposition to judgment on the verdict, as well as a motion and a supplemental motion to disregard jury findings and enter judgment notwithstanding the verdict. The trial court rendered a judgment on the verdict, ordering that Viajes Gerpa recover damages against Ali in the amount of $1,113,500. Ali and Dubai Financial filed a motion for new trial, motion to reconsider, and motion to modify. After considering this motion and Ali's and Dubai Financial's motion and supplemental motion to disregard, the trial court vacated its prior judgment and rendered a judgment that Viajes Gerpa take nothing on its claims against Ali, Nezhat, Dubai Financial, and The Ticket Company. Viajes Gerpa filed a motion for new trial, which the trial court denied. Viajes Gerpa timely appealed.

## II. Analysis

### A. Standard of review

A trial court may disregard a jury's verdict and render a JNOV if no evidence supports one or more of the jury's findings or if a directed verdict would have been proper. *Tiller v. McLure*, 121 S.W.3d 709, 713 (Tex. 2003). We review JNOVs for legal sufficiency of the evidence supporting the verdict, bearing in mind that it is the jury's sole province to evaluate witness credibility and determine the weight to attach to testimony. *Envtl. Procedures, Inc. v. Guidry*, 282 S.W.3d 602, 626 (Tex. App.–Houston [14th Dist.] 2009, pet. denied) (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005)). We measure the sufficiency of the evidence against the relevant part of the jury charge, where, as here, there has been no objection to its form. *See Enzo Invs., LP v. White*, 468 S.W.3d 635, 642 (Tex. App.– Houston [14th Dist.] 2015, pet. denied) (citing *Romero v. KPH Consol., Inc.*, 166 S.W.3d 212, 221 (Tex. 2005)).

We consider the evidence in the light most favorable to the verdict and indulge every reasonable inference that would support the challenged finding, crediting favorable evidence if a reasonable factfinder could and disregarding contrary evidence unless a reasonable factfinder could not. *See City of Keller*, 168 S.W.3d at 823, 827. If the evidence viewed in this light would enable reasonable and fair-minded people to find the challenged fact, then JNOV is improper. *See id.* at 823, 827. "We will uphold the jury's finding if more than a scintilla of competent evidence supports it." *Tanner v. Nationwide Mut. Fire Ins. Co.*, 289 S.W.3d 828, 830 (Tex. 2009).

The trial court granted Ali's and Dubai Financial's JNOV motion on the various claims brought by Viajes Gerpa without specifying the grounds upon which it relied. Therefore, on appeal, Viajes Gerpa has the burden to show that each independent ground fairly asserted against each claim does not provide a basis for affirming the trial court's judgment as to such claim. *See Fort Bend Cty. Drainage Dist. v. Sbrusch*, 818 S.W.2d 392, 394 (Tex. 1991) ("When the trial court states no reason why judgment n.o.v. was granted, and the motion for judgment n.o.v. presents multiple grounds upon which judgment n.o.v.

should be granted, the appellant has the burden of showing that the judgment cannot be sustained on any of the grounds stated in the motion.").

## B. No personal liability of Ali for the 2007 judgment debt of The Ticket Company

### 1. Jury question on liability under section 21.223 of the Texas Business Organizations Code

Viajes Gerpa filed the present lawsuit and attempted to hold Ali "individually liable for the debts of T[he] T[icket] C[ompany], including the [2007] Judgment" pursuant to section 21.223 of the Texas Business Organizations Code.

Jury question 1 asked:

Is Ali Fazeli responsible for the conduct of the Ticket Company, Inc.?

Ali Fazeli is responsible for the conduct of the Ticket Company, Inc. if:

The Ticket Company, Inc. was organized and operated as a mere tool or business conduit of Ali Fazeli; there was such unity between The Ticket Company, Inc. and Ali Fazeli that the separateness of the Ticket Company, Inc. had ceased and holding only the Ticket Company, Inc. responsible would result in injustice; and Ali Fazeli caused the Ticket Company, Inc., to be used for the purpose of perpetrating and did perpetrate an actual fraud on Viajes Gerpa primarily for the direct personal benefit of Ali Fazeli.

In deciding whether there was such unity between The Ticket Company, Inc. and Ali Fazeli that the separateness of The Ticket Company, Inc. had ceased, you are to consider the total dealings of The Ticket Company, Inc. and Ali Fazeli, including—

1. the degree to which the Ticket Company, Inc.'s property had been kept separate from that of Ali Fazeli;
2. the amount of financial interest, ownership, and control Ali Fazeli maintained over The Ticket Company, Inc.; and
3. whether The Ticket Company. Inc. had been used for personal purposes.

"Actual fraud" involves dishonesty of purpose or intent to deceive.

Ali and Dubai Financial objected to the inclusion of The Ticket Company because such defendant was not served. The trial court overruled the objection. The jury answered yes to question 1.

■ A bedrock principle of corporate law is that an individual can incorporate a business and thereby normally shield himself from personal liability for the corporation's contractual obligations as a separate legal entity. *See Willis v. Donnelly*, 199 S.W.3d 262, 271 (Tex. 2006). Under the common law, when the corporation's affiliate—such as an owner, shareholder, officer, or director—has used the corporate form "as part of a basically unfair device to achieve an inequitable result," courts have been willing to disregard the corporate structure and have allowed a corporate obligee to hold a corporate affiliate personally liable for the corporation's obligations. *See, e.g., Castleberry v. Branscum*, 721 S.W.2d 270, 271 (Tex. 1986). One method at common law that a corporate obligee could use to disregard the corporate structure was to establish that the corporate affiliate used the corporation as an "alter ego" by organizing and operating the corporation as a mere tool or business conduit. *See id.* at 272.

Under article 2.21 of the Texas Business Corporations Act, however, the legislature took a "stricter approach to disregarding the corporate structure" as between a Tex-

as corporate entity and an affiliate of the entity. *SSP Partners v. Gladstrong Invs. (USA) Corp.*, 275 S.W.3d 444, 455 (Tex. 2008). In relevant part, article 2.21 provided:

> A holder of shares, an owner of any beneficial interest in shares, or a subscriber for shares whose subscription has been accepted, or any affiliate thereof or of the corporation, shall be under no obligation to the corporation or to its obligees with respect to . . .
>
> any contractual obligation of the corporation or any matter relating to or arising from the obligation on the basis that the holder, owner, subscriber, or affiliate is or was the alter ego of the corporation, or on the basis of actual fraud or constructive fraud, a sham to perpetrate a fraud, or other similar theory, unless the obligee demonstrates that the holder, owner, subscriber, or affiliate caused the corporation to be used for the purpose of perpetrating and did perpetrate an actual fraud on the obligee primarily for the direct personal benefit of the holder, owner, subscriber, or affiliate[.]

*Id.* at 455–56 (citing Tex. Bus. Corp. Act art. 2.21 (expired Jan. 1, 2010)). When the legislature reorganized the statutes governing business entities, this provision was recodified in substantially similar form in section 21.223 of the Texas Business Organizations Code. *Id.* at 456 n.57 (citing Act of May 29, 2003, 78th Leg., R.S., ch. 182, §§ 1, 2, 2003 Tex. Gen. Laws 267, 427, 595); *see Priddy v. Rawson*, 282 S.W.3d 588, 600 n.22 (Tex. App.–Houston [14th Dist.] 2009, pet. denied) (article 2.21 is "now re-codified in sections 21.223–.226 of the Texas Business Organizations Code").

█ Under section 21.223, entitled "Limitation of Liability for Obligations," a shareholder, owner, or a corporate affiliate "may not be held liable to the corporation or its obligees with respect to . . . any contractual obligation of the corporation or any matter relating to or arising from the obligation on the basis that the holder, beneficial owner, . . . or affiliate is or was the alter ego of the corporation or on the basis of actual or constructive fraud, a sham to perpetrate a fraud, or other similar theory" unless the "obligee demonstrates that the [share]holder, beneficial owner, . . . or affiliate caused the corporation to be used for the purpose of perpetrating and did perpetrate an actual fraud on the obligee primarily for the direct personal benefit of the holder, beneficial owner, . . . or affiliate." Tex. Bus. Orgs. Code Ann. § 21.223 (West 2012). That is, alter ego or other similar theories may be used to pierce the corporate veil *only if*: (1) actual fraud is shown and (2) it was perpetrated primarily for the direct personal benefit of the corporation's shareholder, beneficial owner, subscriber, or affiliate. *See id.*; *Ocram, Inc. v. Bartosh*, No. 01–11–00793–CV, 2012 WL 4740859, at *3 (Tex. App.–Houston [1st Dist.] Oct. 4, 2012, no pet.) (mem. op.). Any such liability for an obligation on behalf of the corporation "is exclusive and preempts any other liability imposed for that obligation under common law or otherwise." Tex. Bus. Orgs. Code Ann. § 21.224 (West 2012).

In their JNOV motion, Ali and Dubai Financial argued various bases to disregard the jury's finding in question 1. They contended that Viajes Gerpa failed to meet section 21.223's requirements to pierce The Ticket's Company's corporate veil on the ground of alter ego. They argued there was no evidence that Ali used The Ticket Company as a means of perpetuating an actual fraud by making any misrepresentation to Viajes Gerpa meeting all the elements of fraud. *See Menetti v. Chavers*, 974 S.W.2d 168, 175 (Tex. App.–San Antonio 1998, no pet.). They argued that Viajes Gerpa did not plead or prove fraud relat-

ing to the transaction at issue, the MSA, particularly in connection with its execution. And, they asserted there was no evidence that Ali used The Ticket Company's funds for his direct personal benefit. In addition, Ali and Dubai Financial argued that even if the affirmative finding in question 1 stood, it was immaterial and could not support a monetary judgment because piercing the corporate veil is only a means to impose on an individual a corporation's liability for an underlying cause of action and here there was no underlying judgment against The Ticket Company or award of damages against The Ticket Company in the instant verdict. *See Cox v. S. Garrett, L.L.C.*, 245 S.W.3d 574, 582 (Tex. App.–Houston [1st Dist.] 2007, no pet.).

Viajes Gerpa points to the following evidence:

- Ali was the owner and sole officer of The Ticket Company during the relevant period;
- Ali used The Ticket Company funds to pay his personal mortgage on a home in Nevada;
- The Ticket Company's banking records reflect regular large cash withdrawals;
- Ali continued to operate Onlinetickets.com following the transfer to Dubai Financial;
- Ali maintained ultimate control of the assets of The Ticket Company even after purportedly selling them to Dubai Financial, which placed them out of the reach of The Ticket Company's creditors; and
- The Ticket Company purchased tickets, ceased doing business, and ensured that income from The Ticket Company's operations prior to closing, and all future income, from the same operations, were deposited into Dubai Financial's bank account.

Viajes Gerpa relies on *Tryco Enterprises, Inc. v. Robinson*, 390 S.W.3d 497, 510–11 (Tex. App.–Houston [1st Dist.] 2012, pet. dism'd), where the First Court of Appeals concluded that a couple was personally liable under section 21.223 to a creditor for a corporate judgment in an underlying FLSA suit. Viajes Gerpa also argues that a judgment debtor may seek to pierce the corporate veil to enforce a judgment against a corporation in a subsequent lawsuit against an owner.

In *Menetti*, the San Antonio Court of Appeals performed its legal-sufficiency analysis of actual fraud under article 2.21, the predecessor statute to section 21.223, using the six elements of fraud by misrepresentation where the jury was instructed on the "narrow" definition of fraud by misrepresentation. 974 S.W.2d at 174. In contrast, here, without objection, the jury was instructed that " '[a]ctual fraud' involves dishonesty of purpose or intent to deceive." *See Castleberry*, 721 S.W.2d at 273. Therefore, Viajes Gerpa was not required to prove fraud by misrepresentation. *See Osterberg v. Peca*, 12 S.W.3d 31, 55 (Tex. 2000) (if there has been no objection to jury charge, then charge actually submitted is proper measure of sufficiency of the evidence).

■ However, even assuming without deciding solely for the purposes of our analysis that Ali's conduct involved actual fraud, that such fraud was primarily for Ali's direct personal benefit, and that the 2007 judgment against The Ticket Company could serve as the underlying corporate liability for purposes of piercing the corporate veil, we conclude that there was not legally-sufficient evidence illustrating how Ali's alleged fraudulent usage of The Ticket Company primarily for his direct personal benefit related to the MSA or the

2007 judgment executed pursuant to the MSA.[9]

We find *Solutioneers Consulting, Ltd. v. Gulf Greyhound Partners, Ltd.*, to be instructive. There, we considered the legal sufficiency of the evidence supporting an alter-ego theory to pierce the corporate veil and impose personal liability on a corporate affiliate. *See* 237 S.W.3d 379, 387 (Tex. App.–Houston [14th Dist.] 2007, no pet.) (considering article 2.21(A)(2) of Texas Business Corporations Act). Plaintiff corporation Gulf Greyhound Partners was a client of advertising company Solutioneers, which would obtain sponsorships for the racetrack in return for commissions. *Id.* at 383. Haynes was the owner of Solutioneers. Solutioneers, through negotiations conducted by Haynes, enhanced the value of an existing sponsorship with Miller Brewing Company. *Id.* Miller made its payments to Solutioneers. Solutioneers remitted one payment to Gulf Greyhound late and did not forward any portion of another payment to Gulf Greyhound. *Id.* The jury found Solutioneers breached the contract and awarded Gulf Greyhound the amount of sponsorship payments Solutioneers failed to remit. *Id.* at 383–84. The jury also found that Haynes was responsible for the conduct of Solutioneers under an alter-ego theory. *Id.* In doing so, the jury impliedly found that Haynes perpetrated an actual fraud by using Solutioneers to retain or misappropriate the Miller-sponsorship payments. *Id.* at 388.

However, we reversed and rendered judgment with regard to Haynes' personal liability. Despite evidence that Gulf Greyhound's payments to Haynes kept his businesses afloat and allowed him to continue to receive a salary, and that Haynes' own-

ership interest benefitted from the assets retained by Solutioneers, we concluded there was not more than a scintilla of evidence that Haynes' fraud was primarily for his direct benefit. *Id.* at 388–89. "Moreover, even if we assume maintaining a personal salary from or ownership interest in Solutioneers—by misappropriating the Miller sponsorship payment in order to keep Solutioneers afloat—constitutes a direct personal benefit . . ., we f[ou]nd no evidence in the record regarding any salary Haynes received from Solutioneers or *any evidence illustrating how Haynes's conduct surrounding the Miller transaction affected this salary*." *Id.* at 389. In sustaining Haynes' issue, we concluded that "the record reveal[ed] a complete absence of evidence of direct personal benefit to Haynes resulting from fraud *in connection to* Solutioneers and the Miller sponsorship." *Id.* at 389, 390 (emphasis added).

In other words, to support individual liability under section 21.223, there must be evidence of direct personal benefit to Ali resulting from fraud *in connection to* The Ticket Company and the MSA with Viajes Gerpa or the 2007 judgment executed pursuant to the MSA. *See id.*; *compare Rutherford v. Atwood*, No. 01–00–00113–CV, 2003 WL 22053687, at *4 (Tex. App.–Houston [1st Dist.] Aug. 29, 2003, no pet.) (mem. op.) (no evidence that corporate affiliate's draws from corporate entity's account related to remodeling transaction at issue), *and Menetti*, 974 S.W.2d at 175 (explaining that "the fraud must relate to the transaction at issue, the contract between the Menettis and the Chavers" for construction of addition to the Chavers' home), *with In re Morrison*, 361 B.R. 107, 120 (Bankr. W.D. Tex. 2007), *aff'd*, 555

9. We assume without deciding that Viajes Gerpa would not be required to show that the use of The Ticket Company to perpetrate actual fraud on Viajes Gerpa primarily for Ali's

direct personal benefit related particularly *to the execution* of the MSA or the 2007 judgment.

F.3d 473 (5th Cir. 2009) (majority stockholder on behalf of excavation company provided inaccurate financial statement to plaintiff to win particular subcontract in order to draw his "substantial" salary), *and Farr v. Sun World Sav. Ass'n*, 810 S.W.2d 294, 298 (Tex. App.–El Paso 1991, no writ) (retention of proceeds from sale of promissory note was fraud related to transaction where loan agreement required that proceeds of sale would be given to lender plaintiff); *see also Ocram*, 2012 WL 4740859, at *3 ("We turn to whether there was any evidence of actual fraud. Any evidence must relate to the transaction at issue, namely, the contract between Coastal Framing and the Bartoshes.").

The evidence fails to demonstrate that any fraudulent conduct by Ali in connection with large cash withdrawals from The Ticket Company's bank account and failure to track ticket inventory allegedly purchased with cash related to the MSA with Viajes Gerpa or the 2007 judgment executed pursuant to the MSA. Instead, such evidence reflects general (mis)handling of corporate accounts, recordkeeping, and operations. *See Menetti*, 974 S.W.2d at 175. Moreover, there is no evidence that Ali's usage of The Ticket Company's funds to pay his personal mortgage on a home in Nevada related to the MSA or the 2007 judgment. The record instead indicates that The Ticket Company paid "for that house" starting back in 2004, three years before the MSA and the 2007 judgment. *See Solutioneers*, 237 S.W.3d at 388–89; *Rutherford*, 2003 WL 22053687, at *4–5.

Nor was there more than a scintilla of evidence that Ali's continued operation and

control of The Ticket Company's domain names and phone numbers, and ultimate transfer of The Ticket Company's accounts to Dubai Financial in 2010 related to the MSA or the 2007 judgment. We find *Tryco* distinguishable. In *Tryco*, although the court did not expressly address the requirement that the Dixons' fraudulent conduct in connection with a transfer of corporate assets relate to the underlying FLSA judgment against their staffing company Tryco, there existed legally-sufficient evidence to support individual liability under section 21.223. Unlike here, where the transfer of The Ticket Company's assets occurred almost three years after the MSA and the 2007 judgment, the transfer of Tryco's assets to Crown Staffing occurred mere days after the jury returned its adverse verdict against Tryco and before a final judgment was rendered, and therefore related to, indeed was conducted for the precise purpose of evading, the FLSA judgment against Tryco. 390 S.W.3d at 507, 510–11.

We overrule Viajes Gerpa's issue on question 1.[10]

**2. No liability under section 171.255 of the Texas Tax Code**

■ Viajes Gerpa also attempted to hold Ali "individually liable" for the 2007 judgment under section 171.255 of the Texas Tax Code. This claim was submitted to the trial court, and Viajes Gerpa argues that the court erred in not rendering judgment in its favor.

Chapter 171 of the Texas Tax Code governs franchise taxes for business organizations. Under section 171.251, enti-

10. In its appellate brief, Viajes Gerpa indicates that through question 1 it also sought to hold Ali personally responsible for The Ticket Company's conduct in connection with the alleged fraudulent transfer of The Ticket Company's assets. Viajes Gerpa's argument in support of the veil-piercing issue primarily focuses on enforcement of the 2007 judgment against Ali individually. In any event, we need not reach this argument since we also overrule Viajes Gerpa's issues on its fraudulent-transfer claims. *See* Tex. R. App. P. 47.1.

tled "Forfeiture of Corporate Privileges," the comptroller is required to forfeit the corporate privileges of a corporation on which the franchise tax is imposed if the corporation fails to file a required report, pay the tax imposed or a penalty relating to that tax, or permit the comptroller to examine its corporate records. Tex. Tax Code Ann. § 171.251 (West 2015). If the corporate privileges of a corporation are forfeited, then each director or officer of the corporation is liable for a debt of the corporation as provided by section 171.255. *Id.* § 171.252(2) (West 2015). Section 171.255, "Liability of Director and Officers," provides in pertinent part:

> If the corporate privileges of a corporation are forfeited for the failure to file a report or pay a tax or penalty, each director or officer of the corporation is liable for each debt of the corporation that is created or incurred in this state after the date on which the report, tax, or penalty is due and before the corporate privileges are revived. The liability includes liability for any tax or penalty imposed by this chapter on the corporation that becomes due and payable after the date of the forfeiture.

*Id.* § 171.255(a) (West 2015). "[A] statute like section 171.255 should be strictly construed so that it is not extended beyond the clear import of its language." *Taylor v. First Cmty. Credit Union,* 316 S.W.3d 863, 869 (Tex. App.–Houston [14th Dist.] 2010, no pet.) (citing *Schwab v. Schlumberger Well Surveying Corp.,* 145 Tex. 379, 198 S.W.2d 79, 81 (1946)). The Supreme Court of Texas has defined "debt" as "a specified sum of money owing to one person from another, including not only [an] obligation of [a] debtor to pay but [the] right of [a] creditor to receive and enforce payment." *Seay v. Hall,* 677 S.W.2d 19, 23 (Tex. 1984)

(quoting Black's Law Dictionary 363 (5th ed. 1979)); *see also* New Oxford American Dictionary 447 (3d ed. 2010) ("something, typically money, that is owed or due"); Black's Law Dictionary 462 (9th ed. 2009) ("liability on a claim; a specific sum of money due by agreement or otherwise"). "The unambiguous meaning of 'create' is 'to bring into existence something which did not exist,' and the unambiguous meaning of 'incur' is 'brought on,' 'occasioned,' or 'caused.'" *Taylor,* 316 S.W.3d at 867 (citing *Schwab,* 198 S.W.2d at 81).

In their JNOV motion, Ali and Dubai Financial argued that because the 2007 judgment was a debt that was created or incurred before The Ticket Company forfeited its corporate charter on July 30, 2010, there was no individual liability of Ali. Ali and Dubai Financial contended that, under the "relation back" doctrine, The Ticket Company's debt under the 2007 judgment "related back" to the execution of the MSA in April 2007, relying on *Schwab,* 198 S.W.2d at 80. *But see Taylor,* 316 S.W.3d at 868. According to Ali and Dubai Financial, the debt upon which Viajes Gerpa sued was ascertainable in 2007, when the MSA was executed, and did not need to be triggered by any default.

Viajes Gerpa agrees that The Ticket Company forfeited its charter in July 2010, for failure to pay franchise taxes. However, according to Viajes Gerpa, it was not until after mediation failed in November 2011, well after The Ticket Company forfeited its charter, that an event of default under the MSA occurred and any debt was created or incurred.

Ali and Dubai Financial discount *Taylor*'s application because in that case we applied a statutory definition of "debt" since repealed by the legislature.[11] There,

---

11. Chapter 171 currently does not provide a definition for "debt"—from 1987 until the

end of 2007, however, "debt" was defined as "any legally enforceable obligation measured

Taylor, who was the director of automobile dealer Automotive, had stipulated that Automotive breached the dealer agreement at issue after the date Automotive forfeited its corporate charter. 316 S.W.3d at 867. Taylor asserted, however, that the breach-of-contract damages "related back" to the time when the dealer executed the agreement. *Id.* We rejected Taylor's argument. We first discussed *Schwab*, where the Supreme Court of Texas held that because the debt made the subject of the suit was created before the forfeiture date, the directors and officers were not individually liable. *Taylor*, 316 S.W.3d at 867. We concluded that the *Schwab* Court "did not speak to and did not establish the 'relation back' doctrine." *Taylor*, 316 S.W.3d at 867. We then considered cases applying the "relation back" doctrine as supposedly established by *Schwab*. *See Curry Auto Leasing, Inc. v. Byrd*, 683 S.W.2d 109, 110–12 (Tex. App.–Dallas 1984, no writ) (although noting that lessee breached motor vehicle lease and lessor terminated lease before forfeiture date, court emphasized that debt in question related back to execution of lease and therefore was created or incurred before forfeiture date). In doing so, we concluded that a previous panel opinion, *River Oaks Shopping Center v. Pagan*, 712 S.W.2d 190 (Tex. App.–Houston [14th Dist.] 1986, writ ref'd n.r.e.), wherein we adopted the "relation back" doctrine, was not binding under the circumstances. This was because the result under *Pagan* would "conflict with the statutory definition of 'debt' enacted by the legislature in 1987," which constituted an intervening and material change in the statutory law. *Taylor*, 316 S.W.3d at 869; *see* Act of May 30, 1987, 70th Leg., R.S., ch. 324, § 1, 1987 Tex. Gen. Laws 1734, 1735, *repealed by* Act of May 2, 2006, 79th

Leg., 3rd C.S., ch. 1, § 5, 2006 Tex. Gen. Laws 1, 23 (effective Jan. 1, 2008). Because the "relation back" doctrine was not required by *Schwab* or *Byrd* and was inconsistent with the unambiguous language of the applicable definition of debt in chapter 171, we concluded that the "relation back" doctrine should not be applied. *Taylor*, 316 S.W.3d at 869.

Our sister court recently indicated that the 2008 repeal of the 1987 definition essentially permitted the reemergence of the "relation back" theory. *See Hovel v. Batzri*, 490 S.W.3d 132, 143 (Tex. App.–Houston [1st Dist.] 2016, pet. filed); *Willis v. BPMT, LLC*, 471 S.W.3d 27, 33–34 (Tex. App.–Houston [1st Dist.] 2015, no pet.). However, even assuming without deciding solely for purposes of our analysis that the "debt" could not "relate back" to the execution of the MSA and that the "debt" only could be "created or incurred" at the time of an event of default under the MSA, we conclude that The Ticket Company's debt for the remaining portion of the 2007 judgment was created or incurred before July 2010, such that Ali is not individually liable for the debt.

Under the MSA, the 2007 judgment was not to be recorded or otherwise executed "[s]o long as no Event of Default exists." The MSA provided that " 'Event of Default' shall have the meaning set forth in Section 10." In section 10, the MSA described an "Event of Default":

> In the event any Party breaches any covenant or provision of this Agreement, and thereafter fails to remedy or resolve any such breach within ten (10) days from the date of receipt of written notice ("Notice of Default") of any such breach then the non-breaching Parties, at their

---

in a certain amount of money which must be performed or paid within an ascertainable period of time or on demand." *See* Act of May

30, 1987, 70th Leg., R.S., ch. 324, § 1, 1987 Tex. Gen. Laws 1734, 1735 (repealed effective 2008).

option, may declare that the breaching Party is in default of this Agreement. Notice of any alleged breach must be sent, in writing via certified mail return receipt requested, to all Parties .... The MSA further provided that upon the declaration of default the parties were to submit to nonbinding mediation within 30 days of the receipt of a notice of default by the defaulting party and that, if this mediation failed, then the nondefaulting parties could take legal action to enforce the agreed judgments.

Here, the parties stipulated that Viajes Gerpa informed The Ticket Company of its alleged breach of the MSA by sending The Ticket Company written "notice of default" under the MSA in October 2008. The Ticket Company did not come back into compliance with the MSA within ten days (or at any time thereafter). As a result, at that time, Viajes Gerpa had the "option to declare that [The Ticket Company] is in default of the [MSA]" and choose to seek available remedies. Contrary to Viajes Gerpa's assertion, the MSA, either in section 10 or otherwise, does not condition the existence of an event of default on any conduct by the nondefaulting party seeking mediation or by the defaulting party refusing mediation. Instead, an event of default requires a party's alleged breach, notice of default, and failure to remedy or resolve the breach.

Therefore, as of October 2008, based on The Ticket Company's alleged breach of the MSA and failure to remedy or resolve the breach within ten days, an event of default existed and Viajes Gerpa had the right to pursue The Ticket Company for the obligation remaining under the specified sum of the 2007 judgment, or the "debt." *See Seay*, 677 S.W.2d at 23. Once the event of default existed in 2008, under the MSA, the 2007 judgment could be "recorded or otherwise executed." In other words, the debt came into existence (was created or incurred) at the point of the event of default. *See Schwab*, 198 S.W.2d at 81. Just because Viajes Gerpa did not affirmatively exercise its right to enforce the MSA and the 2007 judgment at that time and instead waited three more years, until late 2011, to seek any remedies against The Ticket Company under the MSA does not mean that an event of default as to The Ticket Company did not already exist and that the corporate debt was not created or incurred as of October 2008.

Having concluded that the debt was not created or incurred post forfeiture, we overrule Viajes Gera's issue seeking to impose individual liability against Ali under section 171.255.[12]

## C.  Jury questions on breach of contract

Jury question 2 asked whether Ali failed to comply with the MSA. Ali and Dubai Financial objected to this question based on a lack of evidence of damages. The trial court overruled the objection. The jury answered yes. Jury question 3 asked whether The Ticket Company failed to comply with the MSA. Ali and Dubai Financial objected to this question on the ground that The Ticket Company was not served. The trial court overruled the objec-

12. The cases relied on by Viajes Gerpa to support individual liability against Ali under section 171.255 do not affect our decision. *State v. Triax Oil & Gas, Inc.*, 966 S.W.2d 123 (Tex. App.–Austin 1998, no writ), and *Cain v. State*, 882 S.W.2d 515 (Tex. App.–Austin 1994, no writ), did not involve any breach of con-tract, but rather the imposition of administrative penalties in the regulatory context against corporate officers and directors for the corporations' failure after forfeiture to plug abandoned wells as continually obligated by statute.

tion, and the jury answered "yes." Jury question 4, which was conditioned on an affirmative answer to question 2, asked:

> What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Viajes Gerpa for its damages, if any, that resulted from the failure to comply with the Master Settlement Agreement by Ali Fazeli?
>
> Consider the following elements of damages, if any, and none other.
>
> The difference, if any, that Viajes Gerpa would have received under the Master Settlement Agreement if Ali Fazeli had complied minus any amounts that Viajes Gerpa did receive.
>
> Do not add any amount for interest on damages, if any. Answer in dollars and cents for damages, if any.

Ali and Dubai Financial objected to this question again on the ground of a lack of evidence of damages. In allowing the question, the trial court stated:

> I understand. We had this significant discussion off the record, regarding whether or not this was a benefit-of-the-bargain-type case, or it was, in essence, a liquidated damages case. If the breach, if any, by Ali Fazeli did, in fact, occur, what were the causation damages? And was there any evidence of that? I guess we'll hear in closing arguments what that's going to be.
>
> But the benefit of the bargain is, had he performed, what would that have resulted in, versus or was it a situation where—that is, they would have made some net cash flow, and what would have been the net cash flow, and what would have been their 21 percent of that net cash flow, whatever that number may be.

Or, maybe there's another way of calculating the benefit-of-the-bargain damages. Or, is it simply the liquidated damage amount that the company paid?

> I understand that is kind of the tension here. And we'll—we'll deal with that post judgment, if necessary.

Ali and Dubai Financial also moved for a directed verdict on the breach-of-contract claim based on no evidence of damages. The trial court denied their motion. The jury awarded damages of $1,113,500.00.

▮▮▮▮ To prevail on a breach-of-contract claim, a party must establish the following elements: (1) a valid contract existed between the plaintiff and the defendant, (2) the plaintiff tendered performance or was excused from doing so, (3) the defendant breached the terms of the contract, and (4) the plaintiff sustained damages as a result of the defendant's breach. *West v. Triple B Servs., LLP*, 264 S.W.3d 440, 446 (Tex. App.–Houston [14th Dist.] 2008, no pet.). A breach occurs when a party fails or refuses to do something the party has promised to do. *Id.* "The goal in measuring damages for a breach-of-contract claim is to provide just compensation for any loss or damage actually sustained as a result of the breach." *Parkway Dental Assocs., P.A. v. Ho & Huang Props., L.P.*, 391 S.W.3d 596, 607 (Tex. App.–Houston [14th Dist.] 2012, no pet.). The normal measure of damages in a breach-of-contract case is the expectancy or benefit-of-the-bargain measure. *Id.* The purpose of this measure of damages is to restore the injured party to the economic position the non-breaching party would have occupied had the contract been performed. *Id.*

With regard to questions 2 and 4, in their JNOV motion, Ali and Dubai Financial first argued that within the MSA, Ali was fully released "of everything except his employment agreement."[13] Further,

13. Ali pleaded the affirmative defense of release, *see* Tex. R. Civ. P. 94, but did not secure

Ali and Dubai Financial argued that the MSA limited Viajes Gerpa's remedies against Ali: "In no event shall any Plaintiff seek any remedy against the Individual Defendants, except for breach of the non-compete and non-solicitation provisions of the Employment Agreements referred to in section 4 and the representations and warranties in section 6." Next, Ali and Dubai Financial contended that, even assuming that Viajes Gerpa did not abandon its claims for any breach of the employment agreement, because The Ticket Company committed a prior material breach by failing to pay Ali's salary, Ali was released from all obligations.[14] Ali and Dubai Financial insisted that the evidence supports Ali complied with his representations and warranties. Finally, Ali and Dubai Financial argued that even if Viajes Gerpa could establish a breach by Ali, Viajes Gerpa failed to introduce evidence of damages caused by such breach where the only evidence of damages was the 2007 judgment against The Ticket Company. According to Ali and Dubai Financial, Viajes Gerpa released Ali from any claims based on this debt,[15] and the only contract damages Ali could be liable for are the separate and independent damages caused by his conduct. Because there was no evidence that Viajes Gerpa would have received $1,113,500 from The Ticket Company—that The Ticket Company would have had net cash flow of over $5.5 million, with Viajes Gerpa entitled to approximately $1.1 million or 21%—had Ali not breached the MSA, there was no evidence of such damages caused by Ali's alleged breach. Ali and Dubai Financial argued that the

jury's answer to question 3 should be disregarded because The Ticket Company was never served. Moreover, even if there were a breach by The Ticket Company, Viajes Gerpa had recourse to pursue a remedy under the 2007 judgment against The Ticket Company.

Viajes Gerpa argues that the evidence supports a finding that Ali breached his obligation to use his best efforts to promote the interests of The Ticket Company and to devote his full business time, energies, and skill to The Ticket Company. Viajes Gerpa contends that the jury reasonably could have concluded "that the damages resulting from [Ali's] breach were liquidated in the amount set by the 2007 Judgment" and that "the jury finding [on question 2] confirms Viajes Gerpa's entitlement to execute on the 2007 Judgment." Viajes Gerpa also contends that The Ticket Company was not a necessary party to the breach-of-contract questions.

■ We conclude Viajes Gerpa failed to present legally-sufficient evidence that it sustained damages of $1,113,500 as a result of any breach of the MSA by Ali. While the MSA may have entitled Viajes Gerpa to record or execute the 2007 judgment if an event of default existed based on any party's breach of the MSA, the 2007 judgment was rendered against corporate defendant The Ticket Company, not against individual defendant Ali. In other words, in the event of default, Viajes Gerpa had to seek any remaining "liquidated damages" provided for in the 2007 judgment against The Ticket Company.

any jury findings concerning release. In any event, the release section of the MSA did not apply to "the obligations undertaken by the Individual Defendants in the employment agreements referred to in Section 4 and the representation and warranties made in Section 6."

14. Ali did not secure any jury findings concerning The Ticket Company's alleged prior material breach.

15. *See* n.13.

Moreover, the MSA expressly stated that the only remedies Viajes Gerpa could seek against Ali were limited to breach of the non-compete and non-solicitation provisions of the employment agreement and of the MSA's individual representations and warranties. The MSA does not state that the agreed judgments against the corporate defendants would supply the measure of damages for any breach by the individual defendants. Nor does the MSA say anything that could be construed as eliminating any requisite element of an individual contract breach, including damages resulting from such breach.

Throughout the case, the only damages Viajes Gerpa ever sought to recover for Ali's breach was the outstanding amount owed by The Ticket Company on the 2007 judgment. The only damages Viajes Gerpa's corporate representative testified to involved the exact amount The Ticket Company agreed to pay in the 2007 judgment. The only damages Viajes Gerpa argued during closing was the remaining amount of the 2007 judgment—"That's our damages." Viajes Gerpa provided no evidence, *e.g.*, in the form of an opinion or an estimate of the amount of lost net cash flow, tending to show, if Ali had complied with the MSA, that Viajes Gerpa would have received $1,113,500 under the MSA. *See id.* at 608–09 (no fact issue on benefit-of-the-bargain damages resulting from alleged breach of lease).

▮▮▮▮ Therefore, we overrule Viajes Gerpa's issue on question 4. Because the trial court did not err in disregarding the

jury's answer to question 4, the trial court properly could disregard the breach finding against Ali in question 2 as immaterial.[16] With regard to the breach finding against The Ticket Company in question 3, Viajes Gerpa "did not seek entry of a judgment against" The Ticket Company on this question but instead sought to establish "an additional basis for enforcement of the 2007 Judgment" against Ali under Viajes Gerpa's veil-piercing theory. However, we already have determined that the trial court did not err in disregarding the jury's answer to question 1. As a result, the trial court properly could disregard the jury's answer to question 3 as immaterial. We likewise overrule Viajes Gerpa's issues on questions 2 and 3.

### D. Jury questions on fraudulent transfer and conspiracy

Jury question 5 asked:

Was the transfer of assets by the Ticket Company, Inc. to Dubai Financial, LLC fraudulent as to Viajes Gerpa?

The assets are those set forth in Plaintiffs Exhibit No. 3 as transferred and assumed under Plaintiff's Exhibit No. 4 and Defendant's Exhibit No. 32.

A transfer made by a debtor is fraudulent as to a creditor, if the debtor made the transfer:

(1) with actual intent to hinder, delay, or defraud any creditor of the debtor; or

---

16. A trial court may disregard a jury finding if it is unsupported by the evidence or it is immaterial. *Green Int'l, Inc. v. Solis*, 951 S.W.2d 384, 389–90 (Tex. 1997). A question is immaterial when it should not have been submitted, it calls for a finding beyond the province of the jury, such as a question of law, or when it was properly submitted but has been rendered immaterial by other findings. *See Se.*

*Pipe Line Co. v. Tichacek*, 997 S.W.2d 166, 172 (Tex. 1999). A jury question also can be considered immaterial when its answer cannot alter the effect of the verdict. *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 752 (Tex. 1995); *Hernandez v. Atieh*, No. 14–06–00582–CV, 2008 WL 2133193, at *3 (Tex. App.–Houston [14th Dist.] May 20, 2008, no pet.) (mem. op.).

(2) without receiving a reasonably equivalent value in exchange for the transfer, and the debtor:

(A) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

(B) intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

"Reasonably equivalent value" includes without limitation, a transfer or obligation that is within the range of values for which the transferor would have sold the assets in an arm's length transaction.

In determining actual intent to hinder, delay, or defraud, consideration may be given, among other factors, to whether:

(1) the transfer or obligation was to an insider;

(2) the debtor retained possession or control of the property transferred after the transfer;

(3) the transfer or obligation was concealed;

(4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;

(5) the transfer was of substantially all the debtor's assets;

(6) the debtor removed or concealed assets;

(7) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

(8) the debtor was insolvent or became insolvent shortly after the trans-

fer was made or the obligation was incurred; and

(9) the transfer occurred shortly before or shortly after a substantial debt was incurred.

Counsel for Ali and Dubai Financial objected to this question, stating: "If The Ticket Company did transfer, how does that impute liability to any of my clients? And if it's a way to impute liability to any of my clients because this is a yes answer, then we object, because The Ticket Company is not here to defend themselves." The trial court overruled the objection, and the jury answered "yes."

Jury question 6 asked whether Dubai Financial purchased the transferred assets in good faith, where "good faith" was defined to mean Dubai Financial did not have actual or constructive notice of circumstances tending to show fraudulent intent, if any, of The Ticket Company. The jury answered "no," rejecting Dubai Financial's good-faith defense. Jury question 7, which was conditioned on an affirmative answer to question 5 and a negative answer to question 6, asked:

What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Viajes Gerpa for its damages, if any, that resulted from such fraudulent transfer?

Consider the following elements of damages, if any, and none other.

In answering questions about damages, answer each question separately. Do not increase or reduce the amount in one answer because of your answer to any other question about damages. Do not speculate about what any party's ultimate recovery may or may not be. Any recovery will be determined by the court when it applies the law to your answers at the time of judgment. Do not add any amount for interest on damages, if any.

Answer separately in dollars and cents for damages, if any.

a. The value for which the Ticket Company, Inc. would have sold the assets in a transaction in which the buyers and sellers or the assets acted independently and had no relationship to each other.

. . .

b. The amount necessary to satisfy Viajes Gerpa's claim.

Ali and Dubai Financial objected to this question again on the ground that The Ticket Company was not served and did not appear. The trial court overruled the objection. The jury answered part (a) with $700,000.00 and part (b) with $150,000.00.

Jury question 8 asked, if the answer to question 5 was yes, were any of Ali, Nezhat, and Dubai Financial part of a conspiracy that damaged Viajes Gerpa. The question instructed:

To be part of a conspiracy, the conspirator and another person or persons must have had knowledge of, agreed to, and intended a common objective or course of action that resulted in the damages to Viajes Gerpa. One or more persons involved in the conspiracy must have performed some act or acts to further the conspiracy.

Ali and Dubai Financial objected on the ground that The Ticket Company was not served and the other parties could not have conspired without The Ticket Company. The trial court overruled the objection. The jury answered "yes" as to Ali and Dubai Financial and "no" as to Nezhat.

Jury question 9 asked, if the jury unanimously answered "yes" to question 5, did the jury find by clear and convincing evidence that the harm to Viajes Gerpa resulted from the fraud, as defined in question 5, by The Ticket Company. The charge defined "clear and convincing evidence" as "the measure or degree of proof that produced a firm belief or conviction of the truth of the allegations sought to be established." Ali and Dubai Financial objected on the ground that the Ticket Company was not served. The jury answered "yes" to question 9.

Finally, jury question 10 asked, if the jury unanimously answered yes to question 9, what sum of money, if any, paid now in cash, should be assessed against The Ticket Company and awarded as exemplary damages, if any, for the conduct found in question 9. The charge defined "exemplary damages" as an amount that the jury in its discretion could award as a penalty or punishment. The charge provided factors to consider in awarding exemplary damages, including the nature of the wrong, the character of the conduct, The Ticket Company's degree of culpability, the situations and sensibilities of the parties concerned, whether the conduct offends justice and propriety, and The Ticket Company's net worth. Again, Ali and Dubai Financial objected on the ground that The Ticket Company was not served and did not appear. The trial court overruled the objection. The jury answered with the amount of $350,000.00.

In their JNOV motion, Ali and Dubai Financial addressed questions 5 and 7 together. They argued that the jury answered parts (a) and (b) of question 7 with arbitrary numbers not supported by any evidence. They further argued that, because in its live petition Viajes Gerpa did not seek damages in connection with its fraudulent-transfer claim, but rather only exemplary damages, a constructive trust over the transferred assets, and avoidance of the transfer, the trial court could not award damages because the pleadings, verdict, and final judgment must align under rule 301 of the Texas Rule of Civil Procedure. Ali and Dubai Financial argued that any judgment on fraudulent transfer

only could be rendered against The Ticket Company, which was not served. Also, they asserted that question 5 never should have been submitted because The Ticket Company was never given an opportunity to defend itself.

With regard to question 8, Ali and Dubai Financial asserted that the jury's answer should be disregarded because question 8 was predicated on question 5. And, Ali and Dubai Financial argued that because questions 9 and 10 sought a fraud finding and exemplary damages against The Ticket Company, which was not served and did not appear, neither such findings nor a judgment based on them could stand.

With regard to The Ticket Company's not being served, Viajes Gerpa points out that it did not request entry of judgment on the jury's findings against The Ticket Company, but only against Ali individually based on its alter-ego theory and against Ali and Dubai Financial as conspirators to the fraudulent transfer. Therefore, there could be no constitutional due process violation as to The Ticket Company. And, according to Viajes Gerpa, the evidence was legally-sufficient to support the jury's finding in response to part (b) of question 7 that the amount of damages necessary to satisfy its claim was $150,000.[17]

On appeal Viajes Gerpa failed to address one of Ali's and Dubai Financial's JNOV grounds. Nowhere does Viajes Gerpa challenge the JNOV ground based on the alleged violation of rule 301: "The judgment of the court shall conform to the pleadings, the nature of the case proved and the verdict, if any, and shall be so framed as to give the party all the relief to which he may be entitled either in law or equity." Tex. R. Civ. P 301. Nor does Viajes Gerpa advance any argument explaining how it may have met any exception to the application of rule 301, such as trial by consent. *See Hartford Fire Ins. Co. v. C. Springs 300, Ltd.*, 287 S.W.3d 771, 779 (Tex. App.– Houston [1st Dist.] 2009, pet. denied) (citing *Roark v. Stallworth Oil & Gas, Inc.*, 813 S.W.2d 492, 495 (Tex. 1991)).

Because Viajes Gerpa has not met its appellate burden of discrediting each independent ground asserted in Ali's and Dubai Financial's motion for the trial court to disregard question 7, we overrule Viajes Gerpa's issue on question 7. *See Sbrusch*, 818 S.W.2d at 394; *see, e.g., Bever Props., LLC v. Jerry Huffman Custom Builder, L.L.C.*, No. 05–13–01519–CV, 2015 WL 4600347, at *8 (Tex. App.–Dallas July 31, 2015, no pet.) (mem. op.) ("We must affirm the JNOV if Taylor, P.A. failed to challenge each of the possible grounds as an appellate issue."); *Brooks v. Mass Mktg., Ltd.*, No. 03–07–00658–CV, 2010 WL 1404739, at *2 (Tex. App.–Austin Apr. 6, 2010, pet. denied) ("Brooks's appellate brief does not even mention, much less rebut, Super S's arguments regarding judicial estoppel and section 18.091.").

Lack of a damages finding renders the fraudulent-transfer liability issue immaterial and any error harmless. *See Anderson, Greenwood & Co. v. Martin*, 44 S.W.3d 200, 217 (Tex. App.–Houston [14th Dist.] 2001, pet. denied); *Harris v. Gen. Motors Corp.*, 924 S.W.2d 187, 188 (Tex. App.–San Antonio 1996, writ denied); *Glockzin v. Rhea*, 760 S.W.2d 665, 668 (Tex. App.–Houston [1st Dist.] 1988, writ denied). Therefore, we overrule Viajes Gerpa's issue on question 5.

In the absence of liability for an underlying tort, "there can be no indepen-

---

17. Viajes Gerpa did not address the legal sufficiency of the evidence to support the jury's award of $700,000 in part (a) of question 7.

dent liability for civil conspiracy." *W. Fork Advisors, LLC v. SunGard Consulting Servs., LLC*, 437 S.W.3d 917, 920 (Tex. App.–Dallas 2014, pet. denied); *Four Bros. Boat Works, Inc. v. Tesoro Petroleum Cos., Inc.*, 217 S.W.3d 653, 668 (Tex. App.–Houston [14th Dist.] 2006, pet. denied); *Baty v. ProTech Ins. Agency*, 63 S.W.3d 841, 864 (Tex. App.–Houston [14th Dist.] 2001, pet. denied) ("[T]o prevail on a civil conspiracy claim, the plaintiff must show that the defendant was liable for some underlying tort."). Therefore, we also overrule Viajes Gerpa's issue on question 8.

Without a finding of tort liability or damages, Viajes Gerpa's claim for punitive damages also fails. *See Twin City Fire Ins. Co. v. Davis*, 904 S.W.2d 663, 665–66 (Tex. 1995) (recovery for punitive damages requires a finding of independent tort with accompanying actual damages); *Houston Mercantile Exchange Corp. v. Dailey Petroleum Corp.*, 930 S.W.2d 242, 249 (Tex. App.–Houston [14th Dist.] 1996, no writ) (punitive damages cannot stand without underlying award of actual damages "even where the punitive damage award has not been challenged for the lack of actual damages"). Therefore, we overrule Viajes Gerpa's issues on questions 9 and 10.

### E. Jury question on attorney's fees

Jury question 11 asked, if the jury answered "yes" to question 2 or 3, what was a reasonable fee for the necessary services of Viajes Gerpa's attorney. The jury awarded a total of $173,250 in attorney's fees. In their JNOV motion, Ali and Dubai Financial argued that no attorney's fees were appropriate because questions 2 and 3 should be disregarded and because no contract damages were established. Ali and Dubai Financial also argued that there was no evidence of presentment except as to The Ticket Company.

Because question 11 was predicated on a "yes" answer to either question 2 or 3, and we already have determined that the trial court did not err in disregarding the jury's answers to these questions, the trial court properly could disregard the jury's answer to question 11 as immaterial. Moreover, because the trial court did not err in disregarding the jury's answer to question 4 and in refusing to award Viajes Gerpa contract damages against Ali, the trial court also properly could disregard the jury's answer to question 11. *See Green Int'l, Inc. v. Solis*, 951 S.W.2d 384, 390 (Tex. 1997). We overrule Viajes Gerpa's issue on question 11.

### III. CONCLUSION

Having overruled all of Viajes Gerpa's issues, we affirm the trial court's final judgment.